ERNESTO PÉREZ, demandante y recurrente, *v.* LUZ M. SAMPEDRO, demandada y recurrida.

*Número:* 157    *Resuelto:* 15 de noviembre de 1962

*Ernesto Juan Fonfrías, Benjamín Ortiz* y *Fausto Ramos Quirós,* abogados del recurrente; *F. Fernández Cuyar,* abogado de la recurrida.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Mediante escritura pública otorgada en el año 1946, don Ramón Fournier por sí y como apoderado de su esposa doña Luz María Sampedro, dio en arrendamiento a don Ernesto Pérez, con opción a compra, una parcela de terreno sita en el barrio de Cangrejos del término municipal de Carolina.

El señor Pérez ejercitó en tiempo hábil su derecho de opción de compra requiriendo por escrito a Fournier en 31 de julio de 1947 para que cumpliera su obligación de venderle la indicada parcela. Éste se avino a cumplir su obligación y al efecto invitó a Pérez para que a través de sus abogados gestionara con él ante la Junta de Planificación la segregación de varias parcelas, entre ellas, aquélla a ser cedida a Pérez.

Por segunda vez éste ejercitó su derecho de opción y en agosto del mismo año Fournier reafirmó por escrito su interés en cumplir su obligación de venderle a Pérez. Entretanto falleció Fournier pero las gestiones de segregación de parcelas continuaron ante la Junta de Planiifcación compareciendo doña Luz María Sampedro Vda. de Fournier y la Puerto Rico Memorial, Inc., como peticionarios y contando con la colaboración del testimonio de Pérez.

Obtenido el permiso de segregación de varias parcelas, entre ellas la ocupada por Pérez como arrendatario, la viuda de Fournier vendió dicha propiedad a la Puerto Rico Memorial, Inc., incumpliendo así su obligación con Pérez.

En marzo de 1955, Pérez demandó a la viuda de Fournier reclamándole indemnización por incumplimiento de la obligación de venderle la parcela ya mencionada.

Luego de celebrado un juicio en los méritos el Tribunal Superior resolvió que la demandada venía obligada a venderle a Pérez la susodicha parcela por un precio de $2.50 el metro y que como ese valor era, en 1955, fecha de la interposición de la demanda, de $8.00 el metro, condenó a la demandada a pagar al demandante la mitad (por ser ésa la proporción de su responsabilidad como viuda de Fournier) entre uno y otro precio, más las costas y $1,000 para honorarios de abogado. Sin embargo, a solicitud de la demandada reconsideró dicha sentencia y concedió únicamente daños nominales al demandante en vista de que éste no presentó prueba sobre el valor de los terrenos para la fecha en que la demandada incurrió en el incumplimiento de su obligación.

En este recurso el demandante imputa al tribunal sentenciador haber cometido error (1) al resolver el caso mediante una doctrina de medida de daños claramente inaplicable, ignorando las disposiciones aplicables de nuestro derecho vernáculo, (2) al concluir erróneamente que el incumplimiento de la obligación de vender por parte de la demandada ocurrió en el año 1947, y (3) al conceder tan sólo daños nominales

y al eliminar el pronunciamiento sobre costas y honorarios de abogado.

El recurrente discute conjuntamente estos errores a excepción del referente a los honorarios de abogado, que no lo discute. Pasaremos a considerarlos en igual forma. ■

La figura jurídica *opción de compra* ha sido calificada por la doctrina jurisprudencial española de contrato *sui generis* con sustantividad propia y perfiles específicos aunque muy similar al contrato de promesa unilateral de venta aceptada del cual sólo lo separa el requisito de la prima o el precio que pueda estipularse en este último por la adquisición del derecho a elegir dentro de cierto plazo entre la ejecución o el desestimiento de la compraventa proyectada, y en todo caso, según lo declara la sentencia de 25 de marzo de 1947 del Tribunal Supremo de España, tanto la promesa unilateral como el derecho de opción quedan sujetos al mismo régimen jurídico obligacional que constriñe a los interesados al cumplimiento de lo pactado, bien *in natura,* bien en la forma supletoria de resarcimiento de daños y perjuicios de acuerdo con las normas generales de la contratación, singularmente con lo dispuesto en los artículos 1091, 1255 y 1256 del Código Civil (equivalente a los artículos 1044, 1207 y 1208 del Código Civil de Puerto Rico, ed. 1930, 31 L.P.R.A., secs. 2994, 3372 y 3373.) ■

El Tribunal Supremo de España ha establecido en varias sentencias, entre ellas la de 23 de marzo de 1945, la de 10 de julio de 1940 y la de 18 de enero de 1947, las diferencias entre la opción y el contrato de promesa de venta. En ellas se sienta la doctrina de que el contrato de opción se rige por las reglas generales de las obligaciones y contratos, y al establecer su distinción con el contrato de promesa recíproca de venta, se dice que en este último las partes no venden y compran, sino que se obligan a vender y comprar, o sea, a prestar un ulterior consentimiento, mientras que en el de opción el promitente ha ofrecido la venta, que al ser aceptada

por el optante al ejercitar la acción, queda la venta perfeccionada. Aceptada pues, la opción dentro del plazo convenido, queda el promitente obligado al cumplimiento. ■

Si el optante se viere imposibilitado de pedir el cumplimiento *in natura* por haber vendido el promitente a un tercero el inmueble prometido, como ocurrió en este caso, puede pedir el cumplimiento en la forma supletoria de resarcimiento de daños y perjuicios. Artículo 1077 de nuestro Código Civil; Sentencia de 7 de enero de 1947, Tribunal Supremo de España que consideró aplicable el artículo 1124 del Código Civil Español (1077 del nuestro, 31 L.P.R.A., sec. 3052), al contrato de arrendamiento de finca urbana cuando en el mismo se estatuye una opción de compra a favor del arrendatario, reiterando así la doctrina de que al contrato de opción se aplican las reglas generales de las obligaciones y contratos. Para que pueda aplicarse el citado artículo 1077 se hace necesario; que haya una obligación constituida, que el obligado deje de cumplirla y, que por esta falta de incumplimiento se irroguen perjuicios. Sentencia de 26 de junio de 1903 y 5 de junio de 1944. T.S.E. Y conforme a las disposiciones del artículo 1059 de nuestro Código Civil la indemnización de daños y perjuicios comprende, no sólo el valor de la pérdida que haya sufrido (daño emergente), sino también el de la ganancia que haya dejado de obtener el acreedor (lucro cesante) salvo las excepciones que no tienen aplicación al caso de autos. ■

Mas es doctrina establecida que para que la acción en reclamación de daños y perjuicios por incumplimiento de contrato pueda prosperar, no basta con que el actor demuestre el incumplimiento de la obligación por el deudor, sino que precisa además que pruebe la existencia real y positiva de los daños causados, "pues de no ser así perdería la indemnización su natural carácter, adquiriendo el de sanción penal, concepto muy diferente al contenido en el art. 1101 (1054 de Puerto Rico; 31 L.P.R.A., sec. 3018); sin que el incumplimiento implique de por sí dicha existencia de perjuicios, al efecto

de relevar de la prueba de los mismos por ser imprescindible la de los dos hechos, o sea, el incumplimiento y el daño. (Sentencia de 15 de junio de 1927)". Manresa, Tomo 8, vol. 1, págs. 152 y 153. *Cf. Boria* v. *Maryland Casualty Co.*, 60 D.P.R. 830 (1942).

Por los autos sabemos que en el contrato de opción se fijó un precio a la parcela a ser vendida, de $2.50 por metro cuadrado; que ejercitado en tiempo el derecho de opción por el demandante, Fournier pospuso el cumplimiento del contrato hasta que la Junta de Planificación aprobara la correspondiente segregación de la parcela, lo cual hizo en el año 1952 y que para el año 1955 el valor en el mercado de parcelas similares era de $8.00 el metro cuadrado. ■

Arguye el recurrente que el tribunal a quo erró al determinar que el incumplimiento del contrato ocurrió en el año 1947, fecha en que ejercitó su derecho de opción y que no habiendo sido hasta 1952 que la Junta de Planificación aprobó la segregación, esa era, por lo menos, la fecha del incumplimiento. Sostiene además, que tratándose de una opción la medida de los daños es el valor del contrato a la fecha en que debió ejecutarse y no la diferencia entre el precio fijado en el contrato y el valor de las tierras al tiempo del incumplimiento o violación del contrato. ■

Cualquiera que sea la medida de los daños en un caso como el presente, el demandante dejó de probar esos daños. En el supuesto, según lo resuelve la sentencia recurrida, que la medida de daños sea la diferencia entre el precio fijado en el contrato y el valor de los terrenos a la fecha de su incumplimiento y aceptando *arguendo*, la proposición del recurrente de que tal incumplimiento ocurrió por lo menos en 1952, no hay base en el récord para determinar, sin entrar en el campo de la especulación el valor de las tierras para dicho año. Por el contrario, si la medida de los daños, según sostiene el recurrente, es el valor del contrato al momento en que debió ejecutarse, ya éste fuera en el año 1947 o en el año 1952,

tampoco hay prueba indicativa de dicho valor. Por lo tanto, el demandante recurrente dejó de probar tanto la pérdida sufrida como la ganancia dejada de obtener. En tales condiciones y bajo la doctrina jurídica que ya hemos expuesto, su acción no puede prosperar.

*Debe en consecuencia confirmarse la sentencia dictada por el Tribunal Superior en 20 de abril de 1959.*