TEXTO COMPLETO DE LA SENTENCIA
Comparecen ante nos Puerto Rico Telephone Company, Agustín García, Jane Doe y la sociedad legal de gananciales compuesta por ambos, como apelantes en los recursos consolidados de epígrafe, solicitando la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, archivada en autos el 29 de agosto de 2003 y notificada el 22 de septiembre del mismo año. El referido Tribunal declaró con lugar la acción por incumplimiento de contrato y daños y perjuicios instada en su contra por Construction Maintenance Systems Corp.
Examinado la totalidad del expediente ante nuestra consideración, con el beneficio de los oportunos alegatos de las partes y de la transcripción de la vista en los méritos, revocamos la sentencia apelada por los fundamentos que se esgrimen a continuación.
II
Los hechos que dan vida a los recursos que nos ocupan se remontan a 1991, cuando Ponce Bonito Development Corp. obtuvo la buena pro en una subasta celebrada por la Puerto Rico Telephone Company, Inc. (en adelante “PRTC”) para la construcción y subsiguiente arrendamiento a la segunda de un nuevo centro de operaciones en el Municipio de Ponce.
Aproximadamente dos años más tarde, Antonio José Morales Padilla, presidente de Construction Maintenance Systems Corp. (en adelante “Construction”) advino en conocimiento de la existencia del proyecto por conducto de Edilberto Nieves, corredor de bienes raíces. Luego de estudiar la viabilidad económica del *327 mismo, Construction, participando el Sr. Nieves como intermediario, efectuó una oferta monetaria para adquirir los derechos de Ponce Bonito sobre el aludido proyecto. Ello así, Ponce Bonito y Construction otorgaron un contrato de opción el 18 de marzo de 1993 mediante el cual los apelados adquirieron la titularidad sobre la propuesta para la construcción y posterior arrendamiento del centro de operaciones de la PRTC.
Así las cosas, PRTC y Ponce Bonito entraron en un período de negociaciones para afinar los pormenores del proyecto. Durante las mismas, hubo varias desavenencias entre las partes en cuanto a la cabida de la estructura que albergaría las oficinas del centro de operaciones, así como sobre el espacio necesario para el número de estacionamientos para el personal de PRTC.
No obstante, Construction contrató un sinnúmero de recursos para encaminar prontamente la realización del proyecto. Así, adquirió los servicios de consultores, abogados, arquitectos y economistas. Además, comenzó la tramitación de los permisos necesarios para la construcción del centro de operaciones.
Acontecidas las negociaciones y procedimientos antes reseñados, el 16 de julio de 1993, las partes celebraron un contrato de opción de arrendamiento. En el mismo, Construction se obligó a ejecutar la opción sobre el proyecto de Ponce Bonito y a completar la construcción y entrega del mismo en un período de 20 meses. Por su parte, PRTC satisfaría un canon fijo una vez ocupara el local. Además, el contrato contenía una cláusula que imponía una penalidad de $200.00 por cada día que el proyecto se encontrare en atraso. Finalmente, la decimoquinta cláusula del contrato concedía un derecho bilateral de rescisión en la eventualidad de incumplimiento por cualquiera de las partes.
El 29 de noviembre de 1993, y en aras de comenzar prontamente el proyecto, la firma de arquitectos Gutiérrez & Gutiérrez presentó una consulta de ubicación ante la Junta de Planificación.
Transcurridos los incidentes procesales de rigor, la Junta de Planificación emitió una resolución denegando el permiso de ubicación solicitado. En síntesis, concluyó que la solicitud de Construction era improcedente, pues el desarrollo propuesto era contrario al Plan de Ordenamiento Territorial para el Municipio de Ponce y a la regulación de zonificación vigente, y no cumplía con los requisitos mínimos de infraestructura proyectada. La oportuna reconsideración instada por Construction fue denegada, por no exponer argumentos nuevos para sustentar su proposición.
En atención a lo anterior, Rainiero Miranda, director de terrenos y edificios de la PRTC, remitió una carta a Construction notificándole la cancelación inmediata del contrato de opción de arrendamiento. Adujo que, restando tan sólo 33 días para la culminación del plazo concedido para la realización del proyecto sin que se hubiese colocado la primera piedra, resultaba imposible el cumplimiento según pactado.
Por ello, PRTC ordenó un nuevo proceso de subasta para la realización de su centro de operaciones en el área sur. Una vez más, Construction participó en el mismo como licitador. Luego de evaluar profusamente las ofertas recibidas, PRTC seleccionó los cinco (5) proyectos más atractivos, entre los que se encontraba la propuesta de Construction.
Sin embargo, y en mérito de que no transcurriera un percance similar al reseñado en los acápites precedentes, el Sr. Miranda le informó a los cinco (5) finalistas mediante carta que ninguna de las ofertas sería entretenida hasta que los estudios de viabilidad del suelo fueran aprobados por las agencias concernientes. Además, PRTC contrató los servicios de Deloitte & Touch, una firma de consultoría, para que determinase cuál era la oferta más viable y satisfactoria para PRTC.
En mérito de lo anterior, Deloitte & Touch eliminó cuatro propuestas y determinó que la mejor oferta era la de PURICO (compañía que ganó la subasta). El proyecto propuesto por Construction se descartó, pues el *328 terreno que adquirieron para consumar la propuesta nuevamente no cumplía con el plan de ordenación territorial del municipio de Ponce. En particular, el local sólo era viable si la región se reclasificaba a una región de suelo urbanizable programado.
Por los hechos antes reseñados, Construction presentó una demanda contra PRTC por incumplimiento de contrato el 16 de febrero de 1996. Alegó, inter alia, que la cancelación del contrato previo a la fecha de vencimiento era un acto ultra vires, por lo que PRTC debía resarcirle los daños sufridos por su conducta ilícita.
PRTC contestó la demanda oportunamente e instó una reconvención. Adujo que la cancelación del contrato fue resultado exclusivo del incumplimiento de la obligación principal del contrato por parte de Construction. Señaló que, dado que Construction no obtuvo los permisos necesarios para construir en el tiempo acordado, la consumación del acuerdo resultaba imposible. PRTC reclamó, además, daños y perjuicios.
Construction replicó, y solicito enmendar la demanda para incluir como causa de acción las actuaciones intencionales del Sr. Agustín García, quien a la fecha de los hechos se desempeñaba como presidente de la PRTCC. Alegó que el Sr. García incurrió en una serie de actos encaminados a la cancelación del contrato. Específicamente, expuso que el Sr. García recibió instrucciones de La Fortaleza de retirar la aceptación de la oferta y de consumar el mismo negocio con Joaquín Arbona.
Transcurridos los incidentes procesales pertinentes, entre los que vale señalar una extensa vista en los méritos y la atención de un recurso interlocutorio por este Tribunal de Apelaciones, el TPI dictó sentencia decretando con lugar la demanda instada por Construction. Determinó el foro sentenciador que la denegatoria de los permisos necesarios para la culminación del proyecto era previsible para los demandados, por lo que actuaron irrazonablemente al exigir la pronta conclusión del proyecto. Además, determinó que Agustín García actuó de mala fe, pues ordenó una investigación sobre la validez de la subasta en la que Construction adquirió sus derechos, así como de métodos para invalidarla.
Concluyó entonces el Tribunal a quo que PRTCC y Agustín García debían resarcir solidariamente a Construction la suma de $1,428,000.00 por ingresos dejados de percibir, gastos incurridos en la preparación del contrato y daños y perjuicios. En adición, impuso una cuantía de $10,000.00 en concepto de honorarios por temeridad.
Inconformes con la referida sentencia, acuden ante nos los apelantes de los recursos consolidados de epígrafe imputándole en conjunto 11 errores al Tribunal de Primera Instancia, a saber: Erró el TPI al: (1) imponerle responsabilidad al amparo de la doctrina de culpa in contrahendo', (2) determinar que PRTCC ostentaba una obligación afirmativa de obtener los permisos para la consumación del proyecto; (3) imponerle la responsabilidad a la PRTCC por los gastos incurridos por Construction en el proceso de la segunda propuesta para el proyecto; (4) en la estimación de los daños; (5) admitir el testimonio de testigos que no estuvieron a la disposición de los apelantes durante el descubrimiento de prueba; (6) al admitir en evidencia el informe pericial de Roberto Rexach, en contravención de las órdenes de este Tribunal; y al (7) imponer honorarios por temeridad. Por su paite, el Sr. García argumenta que incidió el Tribunal al: (8) imponerle responsabilidad en su carácter personal al amparo de la doctrina de culpa in contrahendo', (9) al imponerle responsabilidad aunque no se presentó prueba en el juicio sobre el particular; (10) en la estimación de los daños, y (11) al imponerle honorarios por temeridad
III
A
Dado que los errores primero al cuarto y octavo al décimo versan sobre la apreciación de la prueba efectuada por el Tribunal sentenciador, estimamos pertinente su discusión conjunta.
*329 Conforme al estándar de revisión aplicable al recurso que nos ocupa, se encuentra claramente establecido en nuestra jurisdicción que este foro sólo intervendrá con la apreciación que de la prueba haga un tribunal de primera instancia, cuando se demuestre que la determinación del juzgador sobre los hechos en controversia se encuentra viciada por pasión, prejuicio, parcialidad o error manifiesto. Orta v. Padilla, 137 D.P.R. 927, 937 (1995); Monllor Arzola v. Sociedad Legal de Gananciales, 138 D.P.R. 600, 610 (1995). Este estándar es corolario de que los juzgadores de Primera Instancia se encuentran en mejor posición de aquilatar la prueba testifical, observar el comportamiento de los testigos mientras declaren y adjudicar la credibilidad que merezcan. Id.
Ahora bien, un tribunal apelativo se encuentra en igual posición que el foro de primera instancia en cuanto a la evaluación de la prueba documental, y, por tanto, está facultado para apreciar la prueba apoyándose en su propio criterio. Rebollo v. Yiyi Motors, 2004 J.T.S. 4; Rodríguez Roldán v. Mun. de Caguas, et. al., 133 D.P.R. 694, 701 (1993).
Los apelantes cuestionan la apreciación de la prueba del Tribunal de Primera Instancia. En síntesis, arguyen que la prueba presentada ante el TPI es insuficiente para determinar que le es aplicable la doctrina de culpa in contrahendo, así como para la determinación de la cuantía de daños impuesta en la sentencia. Más aún, afirman que la prueba no demostró la alegada obligación afirmativa de los apelantes de conseguir los permisos para la construcción del centro de operaciones.
Un examen sereno, detallado y ponderado de la evidencia presentada ante el Tribunal de Primera Instancia, genera la creencia de que hubo error manifiesto en la apreciación de la prueba por parte del Tribunal de Primera Instancia. Nos explicamos.
La doctrina de imposición de responsabilidad extracontractual por culpa in contrahendo regula las actuaciones de las partes en las etapas precedentes a la celebración de un contrato. Su existencia está basada en un deber social recíproco de actuar de buena fe en las negociaciones preliminares a la consumación del acuerdo. Torres v. García, 119 D.P.R. 698 (1987). Así, el rompimiento injustificado de las antedichas negociaciones, genera una causa de acción de naturaleza extracontractual, corolario de la violación a los principios sociales de buena fe. Muñiz v. COPAN, 113 D.P.R. 517 (1982).
Como resultado de lo anterior, nuestro más alto Foro estableció un análisis de seis (6) factores para determinar qué constituye el rompimiento injustificado o arbitrario de la negociación:

“(1) el desarrollo de las negociaciones, (2) cómo comenzaron, (3) el curso que siguieron, (4) la conducta de las partes durante su transcurso, (5) la etapa en que se produjo el rompimiento, y (6) las expectativas razonables de las partes en la conclusión del contrato, así como cualquier otra circunstancia pertinente conforme los hechos del caso sometidos a escrutinio judicial. ”

Id., a la pág. 530
Sin embargo, dado que las negociaciones que anteceden al contrato pueden ser de variada índole, la responsabilidad precontractual puede emanar de distintas fuentes. De este modo, se puede imponer responsabilidad al amparo de la doctrina de culpa in contrahendo, no sólo por el rompimiento injustificado de las negociaciones, sino a base de la conducta culposa, dolosa o fraudulenta de la parte demandada. Vilá & Hnos., Inc. v. Owens, 117 D.P.R. 825 (1986).
De una breve lectura de la prueba ante nos se colige la inaplicabilidad de la doctrina antes reseñada a la situación de hechos que nos ocupa. La presente situación no trata sobre un rompimiento injustificado de las partes como determinó el TPI. Véase Apéndice de los apelantes a la pág. 37. Es un hecho indubitado en los *330 recursos de epígrafe que las partes celebraron un contrato de opción de arrendamiento el 16 de julio de 1993, y que dicho contrato regula las relaciones entre las partes.
Por tanto, la indemnización en daños en los recursos consolidados de epígrafe al amparo de la doctrina de culpa in contrahendo no procede, puesto que ya existía entre las paites un vínculo contractual. Nos corresponde entonces dilucidar si Construction está en posición de reclamar daños por violación al contrato entre las partes. La respuesta es en la negativa.
El Artículo 1077 del Código Civil dispone que:

“La facultad de resolver las obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.

El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. También podrá pedir la resolución, aún después de haber optado por el cumplimiento, cuando éste resultare imposible. ”31 L.P.R.A. § 3052 (2004).
Dicho artículo provee dos alternativas independientes y subsidiarias para lidiar con un incumplimiento contractual, a saber: el cumplimiento específico y la resolución. Pérez v. Sampedro, 86 D.P.R. 526, 530 (1962).
Así, el acreedor puede optar entre exigir el cumplimiento de la obligación, o su resolución, y en ambos casos, si tal incumplimiento ha tenido repercusiones en su patrimonio de forma desfavorable, puede reclamar el resarcimiento por los daños con el correspondiente abono de los intereses. Véase, I José Puig Brutau, Fundamentos de Derecho Civil, Vol. 2, 439-447 (4ta ed. 1988).
A tenor con lo anterior, el incumplimiento de una obligación contractual o su descargo negligente dan origen a una acción para reclamar el resarcimiento de los daños ocasionados. Trinidad v. Chade, 2001 J.T.S. 10. A esos efectos, la obligación de presentar evidencia y persuadir al juzgador de los hechos recae sobre la parte que resultaría vencida de no presentarse la prueba. 32 L.P.R.A. Ap. IV, R. 10(a) (2001).
Más aún, es norma claramente establecida en nuestro ordenamiento que un tribunal apelativo no intervendrá con la adjudicación de daños llevada a cabo por el Tribunal de Primera Instancia a menos que la cuantía concedida resulte extremadamente alta o ridiculamente baja. Blas v. Hospital Guadalupe, 146 D.P.R. 267, 342 (1998). Corresponde entonces a la parte que solicita la modificación de las sumas concedidas a nivel de instancia demostrar la existencia de las circunstancias que hace meritorio el que se modifiquen las mismas. Rodríguez Cancel v. A.E.E., 116 DPR 443, 451-452 (1985).
Examinamos acuciosamente el expediente ante nuestra consideración y concluimos que la apelada no ostenta un derecho a ser compensado por incumplimiento de contrato. Veamos.
Como mencionáramos en un acápite precedente, las partes suscribieron un contrato de opción de arrendamiento en julio de 1993. Dicho acuerdo concedía a Construction un plazo de 20 meses desde la firma del contrato para completar y entregar la estructura. Sin embargo, y al igual que cualquier proyecto de la misma envergadura, el mismo no podía comenzarse sino hasta que las agencias pertinentes emitieran los permisos necesarios para su construcción, por lo que la misma estaba supeditada a la aprobación de dichos permisos.
A esos efectos, Construction presentó una Consulta de Ubicación ante la Junta de Planificación, en aras de examinar si el terreno a ser utilizado para el proyecto cumplía con la zonificación vigente. Mediante resolución del 27 de octubre de 1994, la Junta de Planificación denegó la expedición de la consulta de ubicación aludida. Concluyó que el terreno se encontraba fuera del ámbito del plan de ordenamiento territorial para el Municipio *331 de Ponce.
Como resultado, y treinta y tres (33) días antes de la consumación del antes mencionado plazo, los apelantes cancelaron el contrato de opción arrendamiento. Al así proceder, actuaron al amparo de su derecho estatutario de resolver una obligación recíproca donde el cumplimiento de la obligación principal por parte de la apelada era imposible. En la alternativa, los apelantes ejercieron su derecho de rescindir un contrato por no cumplirse una condición suspensiva pactada. De cualquier manera, su actuación se encuentra legitimada por el Código civil, por lo que carecemos de autoridad para imponerle responsabilidad de carácter monetario por ejercer un derecho que les cobija.
Aún así, adujo Construction ante el TPI que el incumplimiento de la obligación dentro del plazo concedido fue resultado de la falta de endoso del proyecto por parte de los apelantes, así como que los últimos eran responsables de gestionar la permisología pertinente. Además apostilló que los apelante actuaron ultra vires al cancelar el contrato previo a la culminación del plazo.
En primer lugar, la aserción de la apelada sobre la carencia de endoso por parte de los apelantes es inmeritoria. Del testimonio del presidente de Construction se desprende que los apelantes enviaron a dos ingenieros para que participaran de las vistas ante la Junta de Planificación. Véase Trascripción de la vista, a la pág. 201. Es erróneo suponer, como en efecto hizo la apelada, que el hecho de que no comparecieran los oficiales de PRTC que participaron en las negociaciones es equivalente a una ausencia de participación. Erró el TPI al acoger la teoría de la apelada.
Por otra parte, la alegación de que PRTC ostentaba la obligación de gestionar los permisos necesarios para la culminación del proyecto es improcedente. A esos efectos, vale señalar que Construction adquirió los servicios de la firma de auditores Gutiérrez & Gutiérrez para que llevara a cabo la encomienda de gestionar la consulta de ubicación. Véase testimonio de Antonio Morales, Trascripción de la vista a la pág 138. De lo anterior se deduce que la apelada tomó a su haber la tarea de adquirir la permisología requerida, independientemente de cuál era el lenguaje del contrato de opción. Intentar adjudicar responsabilidad a los apelantes por sus errores en planificación es contrario a sus propios actos.
Resulta igualmente revelador que el Artículo 7.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, le confiere autoridad discrecional a la Junta para consultar a las agencias que tengan interés en la tramitación del proyecto. De lo anterior se deduce que el Reglamento presupone que los contratistas son las partes tramitantes del proceso, mientras que las agencias son meros interventores. Como resultado, Construction, como proponente de la consulta, era la única obligada a hacerla valer. La obligación de los apelantes de intervenir se encontraba supeditada a la solicitud de la Junta de Planificación.
Similarmente ilustrativa resulta la carta remitida por Construction a Javier Bonnín del Municipio de Ponce en la cual aquélla reconoció que no deseaba repetir el error cometido al solicitar la consulta del segundo proyecto. Véase Trascripción de la vista, a la pág. 180. Actuó erróneamente al TPI al favorecer la alegación de Conshuction sobre el particular.
Finalmente, erró el TPI al determinar que los apelantes actuaron ilícitamente al cancelar el contrato previo a la consumación del plazo. El raciocinio principal en la conclusión del TPI está basada en la cláusula del contrato imponiendo una penalidad por cada día de incumplimiento. Como mencionáramos anteriormente, el cumplimiento de la obligación principal plasmada en el contrato de opción, la construcción del proyecto, resultaba imposible. Como resultado, la cancelación del contrato previo a la culminación del plazo es inconsecuente, pues la imposibilidad sobrevenida para la compleción del contrato era perpetua. Es decir, Conshuction nunca podrá cumplir con lo pactado porque la denegatoria del permiso de ubicación con respecto a los terrenos adquiridos por la apelada era final, definitiva y continua.
*332 Por otro lado, incidió además el TPI al determinar que la cláusula penal que concedía plazos adicionales para completar el contrato constituía una renuncia implícita al derecho a resolver el mismo. Dicha cláusula meramente confería una opción a los apelantes en caso de incumplimiento. No obstante, la cláusula perdió toda validez al tomarse imposible el cumplimiento específico.
Por lo tanto, los apelantes ostentaban un derecho de rescindir el contrato consagrado en el mismo, así como en el Código Civil, supra. Como resultado, carecemos de autoridad para obligar a PRTC a indemnizar pecuniariamente a un contratista cuando la obligación impuesta al último resulta imposible. Los gastos incurridos por Construction en preparación al proyecto eran necesarios para la culminación del mismo, por lo que no responden por ellos los apelantes.
De la misma manera, tampoco pueden ser responsabilizados, por otorgarle una segunda subasta a una tercera corporación, pues hacerlo violentaría los principios más básicos de la libertad de contratación. Más aún, los apelantes adquirieron los servicios de una firma de consultoría para determinar qué propuesta era la más viable para el segundo proyecto, y fue ésta, y no los apelados, la que descartó la propuesta de Construction.
En conclusión, erró el TPI al imponer responsabilidad a los apelantes al amparo de la doctrina de culpa in contrahendo, pues dicha doctrina es inaplicable a la acción incoada por la apelada. Así mismo, incidió al determinar que los apelantes actuaron ultra vires al rescindir el contrato. Por ello, no existe una causa de acción en nuestro ordenamiento vigente que permita responsabilizar pecuniariamente a los apelantes por el ejercicio legítimo de un derecho.
Como resultado de la conclusión a la que llegamos con respecto a la ausencia de un precepto legal que justifique la concesión de un remedio en las acciones de epígrafe, resulta innecesario discutir el resto de los errores esbozados por los apelantes.
B
Como último señalamiento de error en ambos recursos consolidados, los apelantes arguyen que incidió el TPI al determinar que fueron frívolos al no aceptar su responsabilidad, y consecuentemente, temerarios.
No obstante, dado que revocamos la sentencia recurrida, la imposición de temeridad a los apelantes no subsiste.
IV
Por los fundamentos que anteceden, se revoca la sentencia apelada y se dicta otra en su lugar que declara sin lugar la demanda.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones