ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| RTR INSTITUTE, INC.,<br><br>Apelada,<br><br>v.<br><br>SOCIEDAD LEGAL DE GANANCIALES; VILMARY BÁEZ CONCEPCIÓN y la sociedad legal de gananciales compuesta con ISRAEL CLASS ARCE; ISRAEL CLASS ARCE y la sociedad legal de gananciales compuesta con VILMARY BÁEZ,<br><br>Apelante. | KLAN202400239 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Carolina.<br><br>Civil núm.: CA2022CV03512.<br><br>Sobre: cobro de dinero. |

Panel integrado por su presidente, el juez Hernández Sánchez, la jueza Romero García y la jueza Martínez Cordero.

Romero García, jueza ponente.

SENTENCIA

En San Juan, Puerto Rico, a 16 de mayo de 2024.

Comparece la parte apelante integrada por Israel Class Arce, Vilmary Báez Concepción y la sociedad legal de bienes gananciales compuesta por ambos. Nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina, el 22 de enero de 2024, notificada al día siguiente. Mediante el referido dictamen el foro primario declaró con lugar la moción de sentencia sumaria presentada por la apelada RTR Institute, Inc. (RTR).

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* apelada.

I

El 2 de noviembre de 2022, RTR presentó una demanda contra la parte apelante al amparo de la Regla 60 de Procedimiento Civil, 32 LPRA Ap. V[1]. En síntesis, alegó que, el 5 de junio de 2021, las partes habían

---

[1] *Véase*, apéndice del recurso, a las págs. 213-216.

Número identificador

SEN2024_____

suscrito un contrato de opción de compraventa de unos terrenos. Adujo que en el referido contrato se disponía que, de no lograrse la aprobación del préstamo por parte de la USDA Rural Development, la parte vendedora, aquí apelante, tendría que devolver a la compradora RTR la cantidad de $10,000.00, precio estipulado para ejercer la opción[2]. La parte apelante no realizó el pago aludido. Por tanto, RTR solicitó al Tribunal de Primera Instancia que declarara con lugar su demanda, ordenara el pago de la cantidad adeudada, más los intereses y las costas legales.

El 27 de abril de 2023, la parte apelante presentó una moción de desestimación[3]. En su escrito, arguyó que RTR había dejado de exponer una causa de acción que justificara la concesión de un remedio. Afirmó que el contrato en controversia no contenía cláusula alguna que indicara que el depósito para separar la propiedad del mercado por el periodo de 12 meses fuese reembolsable en caso de que no se aprobase el préstamo.

Por su parte, el 16 de mayo de 2023, RTR presentó su oposición a la desestimación y, a su vez, solicitó que se dictara sentencia sumariamente a su favor[4].

El 16 de mayo de 2023, el Tribunal de Primera Instancia declaró sin lugar la solicitud de desestimación presentada por la parte apelante[5].

El 27 de junio de 2023, la parte apelante presentó su contestación a la demanda[6]. En lo pertinente, negó las alegaciones medulares y planteó varias defensas afirmativas; entre ellas, reiteró que la demanda dejaba de exponer una reclamación que justificara la concesión de un remedio. En

---

[2] El referido contrato de compraventa contenía la siguiente cláusula:

> As agreement between SELLER and BUYER: The quantity ($10,000.00) mentioned in paragraph 1 will be returned by the SELLER to RTR Institute Inc. (BUYER) on the loan closing day and USDA will issue the payment for the total amount of the agreed sale ($220,000.00).

*Véase*, apéndice del recurso, a la pág. 120.

[3] *Íd.*, a las págs. 199-201.

[4] *Íd.*, a las págs. 179-198.

[5] *Íd.*, a la pág. 178.

[6] *Íd.*, a las págs. 154-156.

virtud de lo anterior, solicitó al foro primario que declarara sin lugar la demanda instada en su contra.

Entre tanto, el 6 de septiembre de 2023, el foro primario declaró sin lugar la moción de sentencia sumaria presentada por RTR por no satisfacer los requisitos de forma que exige la Regla 36.6 de Procedimiento Civil, 32 LPRA Ap. V.

Tras varias incidencias procesales, entre ellas, la conclusión del descubrimiento de prueba, el 21 de noviembre de 2023, RTR presentó una segunda solicitud de sentencia sumaria[7]. En esta ocasión, reiteró que de los términos del contrato surgía, que el dinero dado en virtud de la opción tendría que devolverse de no aprobarse el préstamo de la USDA.

Por su parte, el 1 de diciembre de 2023, la parte apelante presentó su oposición a la solicitud de sentencia sumaria[8]. En síntesis, arguyó que no procedía que el Tribunal de Primera Instancia dictara sentencia sumaria, pues quedaban pendientes asuntos litigiosos en controversia. Apuntó a la interpretación del contrato y a si la denegatoria del financiamiento por parte de la USDA se había debido a la falta de diligencia, culpa o negligencia de RTR, entre otras. En particular, resaltó que quedaba pendiente de dilucidar si la causa del contrato era la obtención del préstamo hipotecario o la concreción de la compraventa.

Así las cosas, el 23 de enero de 2024, el Tribunal de Primera Instancia notificó a las partes su sentencia[9]. En ella, expresó que declaraba con lugar la moción presentada al amparo de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V. Conforme a la Regla 42.2 de Procedimiento Civil, el tribunal no especificó los hechos probados, ni consignó las conclusiones

---

[7] *Véase*, apéndice del recurso, a las págs. 104-116. Los siguientes documentos fueron adjuntados a la moción de sentencia sumaria: declaración jurada; *íd.*, a las págs. 117-118; *Contrato de Opción de Compraventa*; *íd.*, a las págs. 119-121.; enmienda a contrato de opción de compraventa; *íd.*, a las págs. 112-123; carta dirigida al señor Class; *íd.*, a las págs. 124-125; correo electrónico; *íd.*, a la pág. 126; correo electrónico; *íd.*, a la pág. 127; foto captura de mensajes; *íd.*, a las págs. 128-129; carta de USDA; *íd.*, a la pág. 130.

[8] *Íd.*, a las págs. 62-80. Cabe resaltar que la parte apelante no presentó documento alguno con su oposición.

[9] *Íd.*, a la pág. 28.

de derecho. Finalmente, ordenó a la parte apelante que devolviera los $10,000 reclamados y el interés legal aplicable.

Inconforme con el referido dictamen, la parte apelante presentó una moción de reconsideración el 7 de febrero de 2024[10]. En lo pertinente, sostuvo que en su oposición había aducido que de la prueba documental sometida por RTR se desprendían ciertas controversias reales y sustanciales sobre hechos medulares. Reiteró que el contrato objeto de la controversia era uno de adhesión, el cual debía ser interpretado a favor de la parte que no había participado en su redacción. Insistió en que, si bien consideraba que la sentencia que debía dictarse era una de desestimación de la demanda, por dejar de exponer una reclamación que ameritara la concesión de un remedio, resolver en la alternativa requería que se dilucidaran controversias sobre la credibilidad y voluntad de las partes al otorgar el contrato objeto de controversia. No obstante, en esa misma fecha, el Tribunal de Primera Instancia declaró sin lugar la moción de reconsideración presentada por la parte apelante[11].

Inconforme, el 11 de marzo de 2024, la parte apelante compareció ante nos y formuló el siguiente señalamiento:

> Erró el TPI al dictar sentencia sumariamente y al no desestimar la demanda por falta de una causa de acción que justifique la concesión de un remedio y por la incorrecta aplicación del derecho. Específicamente: (a) al interpretar en contra de los apelados [*sic*] las cláusulas contractuales en un contrato de adhesión; (b) al acoger la interpretación de la apelada de que la causa y finalidad en un contrato de opción a compra es el financiamiento, no la compraventa; (c) al no considerar que el contrato de opción es uno oneroso y el depósito constituyó la prima pactada para su constitución; y (d) al interpretar los términos de *deposit* y *down payment* en el contrato de adhesión.

(Énfasis omitido).

Por su parte, el 9 de abril de 2024, RTR presentó su alegato en oposición. En síntesis, arguye que las cláusulas del contrato en las que se ampara la parte apelante no se podían interpretar del modo propuesto. Es decir, con el fin de concluir que ellos podían retener el pago de $10,000, en

---

[10] *Véase*, apéndice del recurso, a las págs. 5-24.

[11] *Íd.*, a la pág. 5.

ocasión de que no se obtuviera el préstamo de la USDA. Además, sostiene que la parte apelante conocía que, de no aprobarse el referido préstamo, tendría que devolver el depósito entregado. Finalmente, recalcó que la parte apelante no controvirtió, ni presentó prueba alguna en apoyo de su oposición.

Con el beneficio de la comparecencia de las partes litigantes, resolvemos.

II

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, regula todo lo concerniente a la sentencia sumaria. Como es sabido, el propósito de este mecanismo procesal es disponer ágilmente de los casos en los que no estén presentes hechos materiales en controversia, que requieran la celebración de un juicio en su fondo. *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 277 (2011).

Para que esta proceda debe surgir preponderantemente de la prueba que acompaña la sentencia sumaria que no existe controversia sobre hechos medulares del caso. *Íd.* Por tanto, cualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una duda que permita concluir la existencia de una controversia real y sustancial sobre los hechos relevantes y pertinentes. *Íd.*

El Tribunal Supremo de Puerto Rico ha "definido un hecho material como aquel que, de acuerdo con el derecho aplicable, puede alterar la forma en que se resuelve un caso". *Íd.*, a la pág. 278. Véase, además, *Zambrana García v. ELA et al.*, 204 DPR 328, 341 (2020), y *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 110 (2015). Así pues, "[e]n ausencia de una controversia de hechos materiales, el tribunal dictará sentencia si procede en derecho". *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278, y *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1024 (2020),

De otra parte, el Tribunal Supremo ha señalado que no es aconsejable dictar sentencia sumaria en casos cuyas controversias versen

esencialmente sobre asuntos de credibilidad o involucren aspectos subjetivos, como es la intención, los propósitos mentales o la negligencia. *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278. **No obstante, esto no impide la utilización del mecanismo de sentencia sumaria en las reclamaciones que requieran elementos subjetivos o de intención cuando de los documentos que habrán de ser considerados en la solicitud de sentencia sumaria surja que no existe controversia en cuanto a los hechos materiales**. *Íd.*

Finalmente, al evaluar la procedencia de una sentencia sumaria, los tribunales revisores nos encontramos en la misma posición que el Tribunal de Primera Instancia. *Íd.*; *Rivera Matos et al. v. Triple-S et al.*, 204 DPR, a la pág. 1025; *Meléndez González et al. v. M. Cuebas*, 193 DPR, a la pág. 115. Si los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar *de novo* si el foro primario aplicó correctamente el derecho. *Íd.* Por lo tanto, "si el juez se convence de que no existe una posibilidad razonable de que escuchar lo que lee no podrá conducirlo a una decisión a favor de esa parte, debe dictar sentencia sumaria". *Aponte Valentin v. Pfizer Pharmaceuticals, LLC,* 208 DPR, a la pág. 278.

B

Si bien los parámetros del contrato de opción no surgen del Código Civil de Puerto Rico, 31 LPRA sec. 5311, *et seq.*, el mismo ha sido regulado a través de los requisitos establecidos mediante jurisprudencia. Así, el Tribunal Supremo de Puerto Rico ha definido el contrato de opción como:

> [E]l convenio por el cual una parte (llamada concedente, promitente u optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal.

*P.D.C.M. Assoc. V. Najul Báez*, 174 DPR 716, 724 (2008), citando a *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002); *SLG Irizarry v. SLG García*, 155 DPR 713, 722 (2001); *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR 571, 583 (1989).

Se ha entendido que el referido contrato otorga al optante la facultad de determinar, en el plazo concedido, si perfecciona el contrato definitivo,

es decir, el contrato por el cual optó. En su interpretación, el tratadista Puig Brutau expresa que "no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado". J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. 2, pág. 50. Asimismo, el optatario está obligado a no frustrar la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción esté vigente. *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR, a la pág. 250.

Como norma general, el optante puede ejercer su derecho de opción simplemente notificando al optatario su voluntad de perfeccionar el convenio por el cual optó. *Íd.*, a la pág. 246. No obstante, ese derecho queda extinguido con su renuncia, o si transcurre el plazo concedido sin que el optante ejerza la opción, por lo que se estima caducado. *Íd.*, a la pág. 249.

Ahora bien, si la opción se ejerce en el plazo acordado, el contrato de opción queda extinguido y, a su vez, se perfecciona el contrato aceptado, según haya sido previamente delimitado. *Íd.* **Desde entonces, y no antes, las partes están obligadas a satisfacer sus respectivas prestaciones mediante el contrato definitivo.** Véase*, Matos González v. SLG Rivera Freytes*, 181 DPR 835, 842 (2011), opinión de conformidad emitida por la Jueza Asociada Señora Rodríguez Rodríguez, a la que se unió el Juez Presidente Señor Hernández Denton, y la Jueza Asociada Señora Fiol Matta, citando a *Rosa Valentín v. Vázquez Lozada*, 103 DPR 796, 809-810 (1975).

Por otro lado, el Tribunal Supremo ha reconocido que las normas generales sobre las obligaciones y los contratos aplican al contrato de opción. *Rosa Valentín v. Vázquez Lozada*, 103 DPR, a la pág. 804; *Pérez v. Sampedro*, 86 DPR 526, 529 (1962). Por tanto, se considera que también rige el principio de libertad de contratación o autonomía de la voluntad contractual, según el cual las partes pueden pactar las cláusulas y condiciones que estimen convenientes mientras no contravengan las leyes,

la moral ni el orden público. Ello, según establecía el derogado Código Civil de 1930 en su Art. 1207, 31 LPRA sec. 3372, y ahora queda recogido en el Código Civil vigente, en su Art. 1232, 31 LPRA sec. 9753. Véase, además, *Álvarez v. Rivera*, 165 DPR 1, 17 (2005). **En consecuencia, resulta evidente que una vez las partes prestan su consentimiento, quedan entonces vinculadas por los términos del contrato, siendo este la ley entre las partes.** Art. 1233, 31 LPRA sec. 9754.

III

El planteamiento de la parte apelante se reduce a establecer que el contrato suscrito era uno de adhesión y, por tanto, toda duda sobre las cláusulas debía ser interpretada a su favor. En cuanto a ello, resaltó que la parte apelada fue quien incluyó una cláusula adicional. Además, señaló que el contrato provisto por la USDA contenía otra cláusula de la cual surgía que en caso de que no se aprobara el financiamiento, la parte apelante devolvería a la apelada cualquier *down payment* dado, no así el depósito[12]. Al distinguir entre estos conceptos, arguyó que el depósito se refería a una garantía para la celebración de un contrato futuro, mientras que el *down payment* se refería a la cantidad aportada al precio de compra.

Finalmente, la parte apelante reiteró que procedía la retención del pago toda vez que la denegatoria del financiamiento de la USDA se debió a la falta de diligencia de la parte apelada.

Por su parte, RTR arguye que la parte apelante no puede ampararse en la nota realizada en el párrafo número cuatro (4) del contrato, pues esta solo entraba en función al aprobarse el préstamo. Además, sostuvo que la parte apelante conocía que de no aprobarse el préstamo tendría que

---

[12] La aludida cláusula disponía como sigue:

> This option is given to enable the Buyer to obtain a loan made by the Unites States of America, acting through the x Rural Housing Service; ☐ Rural Utilities Service; ☐ Rural Business-Cooperative Service; ☐ Farm Service Agency, hereinafter called the "Government" for the purchase of said property. **It is agreed that the Buyer´s efforts to obtain a loan constitute a part of the consideration for this option and any downpayment will be refunded if the loan cannot be processed by the Government.**

*Véase*, apéndice del recurso, a la pág. 120. (Énfasis nuestro).

devolver el depósito entregado. Ello en virtud de un correo electrónico, cuya copia adjuntó a su moción de sentencia sumaria[13].

Evaluadas las sendas posturas de las partes, la totalidad del expediente ante nos y el derecho aplicable, consignamos las siguientes determinaciones de hechos que no fueron controvertidos:

1. El 5 de junio de 2021, RTR suscribió un contrato de *Opción a Compra de Propiedad Real* con la parte apelante (*Option to Purchase Real Property*)[14].

2. Dicho contrato establecía que, en consideración a la suma de $10,000, los apelantes se comprometían irrevocablemente a vender a RTR las siguientes fincas: Lotes 4A y 4B, Hogar el Paraíso, Sector Breñas, Sabana Ward, Vega Alta[15].

3. Dicho contrato se constituyó con el fin de permitirle al comprador obtener un préstamo del gobierno federal de los Estados Unidos a través del Rural Housing Service[16].

4. El contrato establece en su párrafo 2 que:

> The option is given to enable the Buyer to obtain a loan made by the United States of America, acting through the Rural Housing Service […], hereinafter called "the Government" for the purchase of said property. It is agreed that the Buyer's efforts to obtain a loan constitute a part of the consideration of this option and any down payment will be refunded if the loan cannot be processed by the Government[17].

5. El párrafo tres del contrato, según enmendado, establece que: "The total purchase price for said property is $152,000; said amount includes the $10,000 mentioned in paragraph 1[18]."

6. RTR no logró obtener el préstamo solicitado a Rural Housing Service[19].

---

[13] *Véase*, apéndice del recurso, a la pág. 127.

[14] *Íd.*, a las págs. 119-121.

[15] *Íd.*, a la pág. 119.

[16] *Íd.*, a la pág. 120.

[17] *Íd.*

[18] *Íd.*, a la pág. 122. Nota omitida.

[19] *Íd.*, a las págs. 126 y 130.

7. Ante la negativa de la USDA Rural Housing Service de otorgar el préstamo, RTR solicitó a los apelantes la devolución de los $10,000 dados en opción[20].

8. Los apelantes solicitaron una reducción de los montos a devolver, por conceptos no contratados, y reconocieron que procedía la devolución por lo que solicitaron una extensión de tiempo de un año para realizar el pago[21].

9. A pesar de que RTR les ofreció una breve extensión para realizar el pago, la parte apelante nunca respondió y nunca devolvió el dinero[22].

Como planteamos, las normas generales sobre las obligaciones y los contratos aplican al contrato de opción. En este caso, tras la evaluación de las posturas de las partes, nos resulta evidente que las partes prestaron su consentimiento y quedaron vinculadas por los términos y cláusulas del contrato. Ciertamente, nada surge de los documentos presentados que nos persuada de que la parte apelante podía retener el pago de los $10,000 otorgado en concepto de depósito. De igual modo, de la prueba presentada se desprende que la parte apelante tenía conocimiento de que debía devolver la cantidad otorgada, mas no respondió a las comunicaciones de RTR, ni realizó pago alguno.

En conclusión, tal como discutimos, cuando los hechos materiales realmente están incontrovertidos, nos corresponde revisar *de novo* si el foro primario realizó correctamente el análisis del derecho aplicable. En esta ocasión, nos convence que no existe una posibilidad razonable de que escuchar lo leído podrá conducirnos a una decisión a favor de la parte apelante, por lo que procede dictar sentencia sumaria. En ese sentido, coincidimos con el Tribunal de Primera Instancia en que la parte apelante incumplió el contrato y adeuda a la apelada la cantidad principal de $10,000, según pactada, más los intereses por mora.

---

[20] *Véase*, apéndice del recurso, a las págs. 128-129.

[21] *Íd.*, a la pág. 127.

[22] *Íd.*, a las págs. 126, y 128-129.

IV

Por los fundamentos expuestos, confirmamos la *Sentencia* apelada.

Notifíquese.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones