Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| ERICA MARIE ERICKSON, BEN JAMES ERICKSON y la SLG compuesta por ambos<br><br>Demandantes-Apelados<br><br>Vs.<br><br>JOSÉ CUEVAS GUASH, AIDA VARGAS VARGAS y la SLG compuesta por ambos, ARIS CUEVAS VARGAS<br><br>Demandados-Apelantes | KLAN202401146 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Añasco<br><br>Caso Núm. AÑ2023CV00022<br><br>Sala: 201<br><br>Sobre:<br><br>Incumplimiento Contractual |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.[1]

Cruz Hiraldo, Juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2025.

Comparece ante nos el Sr. José Cuevas Guash (en adelante, Apelante y/o señor Cuevas Guash), por sí y en representación de la Sociedad de Bienes Gananciales (en adelante, SBG) que tenía compuesta con la Sra. Aida Vargas Vargas (en adelante, señora Vargas Vargas) mediante *Apelación* y nos solicita que revoquemos la *Sentencia* emitida el 5 de junio de 2024, notificada el 6, por el Tribunal de Primera Instancia, Sala Superior de Añasco.[2] Mediante el referido dictamen el TPI declaró Ha Lugar la *Demanda* presentada por la Sra. Erica Marie Erickson, el Sr. Ben James Erickson y la Sociedad de Bienes Gananciales compuesta por ambos (en adelante, Apelados y/o esposos Erickson). Como parte de su *Sentencia,* el Foro *a quo* ordenó al Apelante a pagar la cantidad total de $5,269.63 por

---

[1] Mediante la OATA-2025-070 del 9 de mayo de 2025, se designó a la Hon. Monsita Rivera Marchand para entender y votar en el caso de epígrafe en sustitución del Hon. Abelardo Bermúdez Torres.
[2] Apéndice VIII del Recurso, a la págs. 16-26; Entrada 89 SUMAC.

incumplimiento de contrato. Asimismo, condenó al Apelante de manera solidaria a pagar la suma de $10,000.00 en honorarios de abogado más los intereses legales al 8% desde el 16 de febrero de 2023, fecha de la presentación de la *Demanda*.

Examinado el Recurso de Autos *confirmamos* la *Sentencia* apelada por los fundamentos que expondremos a continuación.

*-I-*

El 16 de febrero de 2023, los esposos Erickson presentaron una *Demanda*.[3] En esta, incluyeron al Apelante, a la señora Vargas Vargas y a la SBG compuesta por estos (en adelante, esposos Cuevas Vargas) y Aris Cuevas Vargas. En síntesis, alegaron que el 21 de diciembre de 2021 estos acordaron con los esposos Cuevas Vargas la compra de un bien inmueble ubicado en Añasco, mediante un contrato de opción a compra en el que se estableció que el precio de la unidad sería de $150,000.00 con un depósito de $5,000.00. Señalaron que el contrato establecía que los Apelados tenían ciento veinte (120) días para ejercer la compraventa y que de terminar este, los vendedores, esposos Cuevas-Vargas, debían pagar en el término de cinco (5) días el depósito de $5,000.00. También que, en caso del incumplimiento de los vendedores, los compradores tendrían el derecho de cancelarlo, en cuyo caso tendrían el derecho a resarcimiento de daños más la devolución del depósito.

Por otro lado, los Apelados en la referida *Demanda* señalaron que para la referida compraventa el Apelante ostentaba un poder especial que fue otorgado por la señora Vargas Vargas el 18 de agosto de 2021 en el Estado de Florida. Dicho poder fue protocolizado el 20 de agosto de 2021. A su vez, que el 17 de febrero de 2022 los Apelados entregaron al Apelante un cheque por la suma de $5,000.00. Sostuvieron que obtuvieron la preaprobación de la

---

[3] Apéndice I del Recurso, a las págs. 1-4; Entrada 1 SUMAC.

compra de la propiedad con FirstBank, no obstante, que el banco les solicitó para la aprobación de la compraventa mediante hipoteca el sellado del techo y la instalación del servicio de agua en la propiedad. Por su parte, añadieron que consultaron con el Apelante y su hija, sobre el sellado de techo y el servicio de agua, y acordaron que estos lo harían. Por tal razón, los Apelados contrataron al Sr. Patrick Karlsson, quien hace negocios como PK Remodeling and Roofing, y este les cotizó la cantidad de $4,311.00 para el sellado del techo.

Por otra parte, añadieron que luego, estando cerca para el cierre del préstamo hipotecario, FirstBank les informó que el poder que el señor Cuevas Guash, otorgado por su esposa no era viable debido a que estos advinieron en conocimiento sobre que la señora Vargas Vargas padecía de Alzheimer. A su vez, los Apelados sostuvieron que FirstBank solicitó una nueva mensura para marzo del año 2022. Alegaron que el Apelante se comprometió a contratar una persona para ello pero que no lo hizo.

De otro lado, arguyeron que, ante la noticia al Apelante sobre la inviabilidad del poder, este y su hija les notificaron que acudieran a Rincón Coop., alegando a que allí el poder no sería un problema. Los Apelados aclararon que así lo hicieron y que, en agosto de 2022, Rincón Coop. le notificó que debían hacer una mensura. Esto debido a que, el Apelante no hizo la mensura solicitada por FirstBank. Arguyeron que, sin embargo, la solicitud no tuvo éxito y debido a lo anterior no pudieron completar la compraventa de la propiedad por negligencia del Apelante.

Asimismo, en la referida *Demanda*, alegaron que luego del incumplimiento, el Apelante anunció nuevamente la propiedad para la venta por un precio de $260,000.00, cuando el precio anterior era de $150,000.00. Sostuvieron que lo anterior denota que el incumplimiento de contrato fue intencional para vender la

propiedad en un precio más alto. Añadieron que estos solicitaron en varias ocasiones el reembolso de los $5,000.00, más los gastos incurridos en la propiedad y que, no obstante, el Apelante respondió que así lo harían una vez se vendiera la propiedad. Sostuvieron que participaron de un procedimiento de mediación que no tuvo éxito y que la hija del Apelante, Sra. Aris Cuevas Vargas incurrió en actos intencionales para evitar que se vendiera la propiedad por el precio estipulado.

Finalmente, los Apelados alegaron que la señora Cuevas Vargas y el Apelante incurrieron en temeridad por actos negligentes y culposos. Por tanto, solicitaron al TPI que declarara Ha Lugar la *Demanda* y, en consecuencia, que ordenara el pago de $10,000.00 por gastos legales incurridos; $5,000.00 del depósito ofrecido más los intereses legales desde la fecha de la presentación de la *Demanda*; $149.63 del pago del servicio de agua; $4,311.00 por el pago del sellado de techo; $809.00 por el pago otorgado a FirstBank, con relación a los pagos de hipoteca; los intereses legales; y, una suma igual por concepto de daños punitivos.

El 22 de mayo de 2025 el Apelante, su esposa y la señora Cuevas Vargas presentaron su *Contestación a la Demanda*.[4] En resumen, sostuvieron que la condición mental de la señora Vargas Vargas, luego de otorgado dicho poder, se deterioró al extremo de incapacitarla para brindar consentimiento a cualquier transacción. Así, pues, solicitaron que el TPI declarara No Ha Lugar la *Demanda* y les concediera una suma de $5,000.00 por honorarios de abogados. El 20 de abril de 2023, notificada el mismo día, el TPI mediante *Orden* señaló Vista para el Estado de los Procedimientos a celebrarse el 24 de mayo de 2023.[5]

---

[4] Apéndice III del Recurso, a las págs. 7-10; Entrada 19 SUMAC.
[5] Entrada 16 SUMAC.

El Juicio en su Fondo se celebró los días 17 de octubre de 2023 y 22 de mayo de 2024.[6] El 20 de diciembre de 2023 el Apelante informó al Foro primario el fallecimiento de la señora Vargas Vargas y solicitó que se trajeran a sus herederos en sustitución. En consecuencia, de lo anterior, el 28 de noviembre de 2023, se enmendó la Demanda para unir al pleito a la señora Brenda Cuevas Vargas (señora Cuevas Vargas).

Luego de varios incidentes procesales innecesarios pormenorizar, el 24 de abril de 2024, la señora Cuevas Vargas presentó su *Contestación a la Demanda*.[7] Sostuvo que adopta por referencia la *Contestación a la Demanda* presentada por el Apelante. Así las cosas, el 5 de julio de 2025, notificada el 6, el TPI dictó *Sentencia*.[8] Dispuso las siguientes determinaciones de hechos:

1. El 21 diciembre de 2021, la Sra. Erica M. Erickson ("Sra. Erickson") y su esposo Ben J. Erickson, acordaron con José Cuevas Guash ("Sr. Cuevas") y Aida Vargas Vargas ("Sra. Vargas") la compra de un inmueble localizado en el Bo. Espino de Añasco, Puerto Rico, mediante un contrato de opción de compraventa. Esto, con la intención de dedicar la propiedad a alquiler o como inversión.

2. El Sr. Cuevas ostentaba un poder especial que le fue otorgado por la Sra. Vargas, en el Estado de la Florida, Estados Unidos de América, para el 18 de agosto de 2021; el cual fue protocolizado para el 20 de agosto de 2021 mediante Escritura 71, otorgada por el Notario Miguel Ángel Montalvo Delgado.

3. El inmueble sujeto a la opción de compraventa, pertenecientes a los demandados, cuenta con el número de CRIM 182-001- 006-75-000, estando registrada en el Registro de la Propiedad de Mayagüez, bajo la Finca 6764, Folio 92, Tomo 193 ("inmueble").

4. Las partes acordaron que el precio de la compraventa sería $150,000.00, siendo pagado un depósito de $5,000.00 al suscribir el contrato, el cual quedaría en una cuenta de escrow que sería restado al precio de compraventa una vez consensuado el contrato de compraventa.

5. El contrato entre las partes dispone que, de culminar el contrato entre las partes, los vendedores deberán pagar a los compradores, en el término de cinco (5) días, el depósito de los $5,000.00 brindado en el contrato.

6. El contrato dispone que, en caso de su incumplimiento por los vendedores, los compradores tendrán el derecho de cancelarlo, en cuyo caso tendrán derecho al resarcimiento de daños más la devolución del depósito de $5,000.00; o tendrá derecho a exigir el cumplimiento específico del contrato, o daños, o ambas.

---

[6] En el juicio en su fondo se presentaron los siguientes testimonios: por la parte Apelada testificó el Sr. Patrick Karlsson y la Sra. Erica Marie Erickson. Además, en ese día presentaron 19 Exhibits por la parte demandante. Por otro lado, la parte Apelante presentó el testimonio del agrimensor Víctor Seda.

[7] Apéndice V del Recurso, a la pág. 13.

[8] Apéndice VIII del Recurso, a las págs. 16-26.

7. El contrato dispone que antes de poder acudir ante el Tribunal o un procedimiento de arbitraje, las partes deben agotar un procedimiento de mediación en cuyo caso, de no llegar a mediación, podrán presentar la acción mediante arbitraje o ante los tribunales.

8. El 17 de febrero de 2022, la Sra. Erickson pagó al Sr. Cuevas la suma de $5,000.00 mediante el cheque 20062824, según se acordó en el contrato de opción de compraventa.

9. Los demandantes obtuvieron preaprobación de un préstamo hipotecario para la compra del inmueble con el FirstBank y luego de Coop. Rincón.

10. El 19 de marzo de 2022 el FirstBank le notificó a la Sra. Erickson mediante correo electrónico, que requerido antes del cierre del préstamo hipotecario que se realizaran las siguientes reparaciones al inmueble. El inmueble debía tener servicio de agua, se debía realizar un sellado del techo, entre otros.

11.La Sra. Erickson coordinaba todo asunto y negociación de la compraventa de la propiedad con el Sr. Cuevas y con su hija, la Sra. Aris Cuevas.

12. La Sra. Erickson consultó con el Sr. Cuevas y con su hija, la Sra. Aris Cuevas, sobre el sellado del techo y poner el servicio de agua en la propiedad. Ellos aprobaron que la Sra. Erickson hiciera los arreglos y pusiera el agua en la propiedad. Así las cosas, la Sra. Erickson contrató a Patrick Karlsson, quien hace negocios como PK Remodeling and Roofing, para hacer los trabajos de sellado, cuyo costo del sellado salió en $4,311.00.

13. El 22 de abril de 2022 el Firstbank informó que el poder que ostenta el Sr. Cuevas sobre su esposa, la Sra. Vargas no era viable, ya porque ésta sufría de alzhéimer; esto imposibilitaba la viabilidad del poder. Por lo que requirió una certificación médica por parte del médico de la Sra. Vargas donde certificara que ésta estaba capacitada para entender el negocio de compraventa a realizarse.

14.Además, FirstBank solicitó una mensura para la propiedad. El Sr. Cuevas y su hija, la Sra. Aris Cuevas le comunicaron a la Sra. Erickson que se comprometerían en contratar una persona para realizar el mismo.

15. La Sra. Erickson le indicó sobre el requerimiento de la certificación médica del FirstBank a la Sra. Aris Cuevas. La Sra. Aris Cuevas le indicó a la Sra. Erickson que acudiera a Coop. Rincón, ya que según su abogado las cosas en Coop. Rincón serían rápidas, que allí el poder no sería un problema.

16. La Sra. Erickson acudió a Coop. Rincón y allí comenzaron los procesos de hipoteca.

17. El 22 de agosto de 2022 la Coop. Rincón notificó a las partes que para el cierre del préstamo hipotecario para la compra del inmueble se requería la mensura.

18. El 30 de septiembre de 2022 la Sra. Carmen B. Lorenzo, Oficial de Préstamos Hipotecarios de Coop. Rincón, notificó a las partes que se requería la mensura del inmueble para cerrar el préstamo.

19. El 6 de octubre de 2022 la Sra. Aris Cuevas le notifica a la Sra. Erickson que se comunicara con el Agrimensor Víctor Seda para la mensura del inmueble.

20. El Agrimensor Víctor Seda fue contratado por la Sra. Aris Cuevas con posterioridad al 6 de octubre de 2022 para realizar la mensura de la propiedad.

21. El 18 de noviembre de 2022 la Sra. Erickson le notificó a la Sra. Carmen B. Lorenzo, Oficial de Préstamos Hipotecarios de Coop. Rincón, que la Sra. Vargas sufría del alzhéimer. La Sra.

Carmen Lorenzo le contestó que si ese era el caso la venta no se podía completar.

22. Al no completarse la compraventa del inmueble la Sra. Erickson le reclamó a los demandados que se le reembolsara el depósito realizado para el contrato de opción de compraventa y los gastos incurridos en el sellado del techo, el gasto de agua y los gastos incurridos en la tramitación del préstamo con el FirstBank. La parte demandada se negó a la solicitud de la Sra. Erickson.

23. El 21 de noviembre de 2022 mediante correo electrónico el Lic. Miguel Montalvo le notificó a la Sra. Erickson sobre la reclamación de ésta, que había otro comprador interesado en la propiedad y tan pronto se cerrara dicha venta le reembolsarían los gastos que ella incurrió, que pudiera evidenciar con recibos y le devolverían los $5,000.00 de depósito para la compraventa.

24. El 27 de noviembre de 2022 mediante correo electrónico la Sra. Erickson le cursó al Lic. Miguel Montalvo los recibos de gastos incurridos para el sellado del techo, las facturas del agua, y los gastos incurridos ante el FirstBank y del pago de los $5,000.00 para la opción de compraventa. Sin embargo, la parte demandante no recibió el pago.

25. Las partes acudieron a mediación antes de presentar este pleito, pero no se logró ningún acuerdo entre las partes.

26. El 6 de marzo de 2023, ya presentado el pleito, la parte demandada le reembolsó los $5,000.00 de depósito para el contrato de opción de compraventa a la parte demandante.

27. Ni la Sra. Aris Cuevas, ni el Sr. José Cuevas presentaron una certificación médica según solicitado por el FirstBank o realizaron un proceso de tutoría de la Sra. Vargas debido a su condición de alzhéimer para que el préstamo hipotecario para la compraventa del inmueble se pudiera cerrar.

28. El contrato de opción de compraventa entre el Sr. y la Sra. Erickson y los Cuevas Vargas no se consensuó.[9]

En síntesis, declaró Ha Lugar la *Demanda* y ordenó al Apelante, a la señora Cuevas Vargas, a la SBG Cuevas Vargas y a la señora Cuevas Vargas a pagar de manera solidaria lo siguiente: Pago del servicio de agua potable: $149.63; Pago de Sellado del techo: $4,311.00; Pago de $809.00 pagados a Firstbank para un total de $5,269.63 y condenó a estos a pagar la suma de $10,000.00 dólares en Honorarios de Abogados más el 8% en intereses legales desde la presentación de la Demanda, desde el 16 de febrero de 2023.

El 15 de junio de 2024 el Apelante presentó *Solicitud de Determinaciones Adicionales de Hechos y Reconsideración.*[10] Solicitaron las siguientes determinaciones de hechos adicionales:

a. Que en la demanda presentada por la señora Erica Marie Erickson, se nombró al contratista que selló el techo de la

_____

[9] Apéndice VIII del Recurso, a las págs. 16-26; Entrada 89 SUMAC.
[10] Apéndice IX del Recurso, a la pág. 27; Entrada 91 SUMAC.

residencia opcionada para la venta a la demandante, como Patrick Karlsson y no como Patrick Carlson como lee en la sentencia dictada y notificada por el Tribunal el 6 de junio de 2024.

b. Que Patrick Karlsson, a quien en la sentencia se nombró como Patrick Carlson, hace negocios como individuo y se dedica entre otras cosas al sellado de techos de residencias en toda la isla de Puerto Rico. c. Que conforme al testimonio de Patrick Karlsson, en la sentencia nombrado como Patrick Carlson, y de la propia demandante, Erica Marie Erickson, Patrick Karlsson, no figura como contratista registrado ante el Departamento de Asuntos del Consumidor (DACO).

d. Que los demandados nunca negociaron directamente con Patrick Karlsson, en la sentencia nombrado como Patrick Carlson, el sellado de techo de la residencia cuya venta está en controversia.

e. Que conforme al testimonio del señor Patrick Karlsson, en la sentencia nombrado como Patrick Carlson, y al de la demandante, Erica Marie Erickson, los demandados no hablaron con Patrick Karlsson sobre el sellado de techo de la residencia en venta objeto del presente pleito.

f. Que fue la demandante, Erica Marie Erickson quien contrató al señor Patrick karlsson, en la sentencia nombrado como Patrick Carlson, para sellar el techo de la residencia en venta a la demandante.

g. Que fue la señora, Erica Marie Erickson, quien acordó con Patrick Karlsson, en la sentencia nombrado como Patrick Carlson, el costo de dicho sellado de techo de la residencia perteneciente a los demandados y en venta a la demandante.

h. Que Erica Marie Erickson conocía a Patrick Karlsson, en la sentencia nombrado como Patrick Carlson, previo a proceder con el sellado de techo de la residencia opcionada, por que este había realizado trabajos para ella anteriormente.

i. Que fue la demandante, Erica Marie Erickson, quien preparó y envió para su firma el contrato de opción de compra de la residencia en controversia a los demandados.

j. Que la demandante Erica Erickson no presentó ante los bancos Firstbank, ni la Cooperativa de Ahorro y Crédito de Rincón, un poder debidamente protocolizado en que su esposo, Ben James Erickson, la facultaba a actuar a nombre de este para la adquisición de la residencia en litigio.

k. Que Erica Marie Erickson no pudo protocolizar el poder de su esposo Ben James Erickson ya que el estado de Carolina del Norte, EUA no autenticó la firma del notario que alegó la demandante que lo había notarizado.

l. Que la abogada del Firstbank le solicitó a la demandante, Erica Marie Erickson, que le enviara el poder protocolizado de su esposo Ben James Erickson. (ver exhibit 10 anejo 4, página 1).
m. Que la demandante, Erica Marie Erickson, declaró que no le entregó el poder protocolizado de su esposo. Ben James Erickson, a la abogada del Firstbank.
n. Que la demandante, Erika Marie Erickson no proveyó un poder debidamente protocolizado, en el que el señor Ben Erickson la autorizaba a representarlo en la demanda de epígrafe ante el Tribunal.

o. Que el señor Ben Erickson no declaró, ni se presentó de manera directa en el presente caso ante el Tribunal de Primera Instancia sala de Añasco.

p. Que, para el 6 de octubre de 2022, la Sra. Aris Cuevas, le envió por mensaje de texto a la demandante los números de teléfono del agrimensor, Víctor Seda, para que corroborara que había hecho las gestiones para la mensura solicitada.

q. Que en el juicio en su fondo declaró el agrimensor Víctor Seda y el mismo manifestó que para el mes de noviembre de 2022 terminó la mensura del solar en venta que le fue encomendada por los demandados.

r. Que, conforme al testimonio del agrimensor, Víctor Seda, los demandados pagaron la suma de $900 por dicha mensura.

s. Que la demandante Erika Erickson es abogada de profesión y no ejerce dicha profesión.

t. Que la demandante, Erica Marie Erickson, no les solicitó a los demandados que realizaran el proceso judicial de declaración de incapacidad y nombramiento de tutor en relación con Aida Vargas Vargas, para tramitar la venta de la casa en controversia, y optó por cambiar de banco y tramitar el préstamo en la Cooperativa de Ahorro y Crédito de Rincón.

u. Que la demandante Erika Erickson le explicó mediante mensaje de texto a la codemandada, Aris Cuevas, que la señora Aida Vargas Vargas conforme a le ley en Puerto Rico se presumía capacitada hasta que el tribunal la declarara incapaz (ver Exhibit 5, anejo 3 páginas 10-11).

v. Que la demandante Erika Erickson les indicó a los demandados que si cambiaban de banco nadie podía decir nada sobre la condición mental de la señora Vargas (ver exhibit 5 anejo 3 página 11).

w. Que el proceso de tramitación de préstamo hipotecario ante la Cooperativa de Ahorro y Crédito de Rincón se canceló cuando la señora Erika Erickson le indicó a la empleada de la Cooperativa de Rincón, Carmen Lorenzo, que la señora Aida Vargas padecía de Alzheimer (ver exhibit 12 anejo 5, página 1).

x. Que la demandante, Erica Marie Erickson, no presentó ante el Tribunal, ningún cheque que evidenciara el o los alegados pagos efectuados por esta para pagar por el sellado de techo de la residencia de los demandados.

y. Que, la factura por el sellado de techo que envió la demandante, Erica Marie Erickson a los demandados, no tenía la firma de ninguna persona en la misma.

z. Que los estados de cuenta presentados por la demandante contienen alegados retiros por la suma de $3,100.00 y no indican a quien fueron pagados ni para que fueron usados. (ver exhibit15, anejo 6 páginas 1-5)[11]

Por otra parte, el Apelante en su reconsideración sostuvo que el contrato de obra para el sellado de techo que le impuso a pagar el TPI es contrario a la Ley debido a que el Contratista no estaba registrado en el DACO. Además, añadió que es una cuestión *nula ab initio* y que este no participó directamente en la contratación. Finalmente, solicitó al Tribunal que declarara No Ha Lugar la *Demanda* presentada y los relevara de los pagos impuestos.

---

[11] Apéndice IX del Recurso, a la pág. 27; Entrada 91 SUMAC.

El 19 de junio de 2024 los Apelados presentaron su *Oposición a Solicitud de Determinaciones Adicionales de Hechos y Reconsideración.*[12] Sostuvieron que las alegaciones del Apelante para la reconsideración de la *Sentencia* estaban basadas en puntos que no eran pertinentes a la controversia, que es el incumplimiento contractual. Así, pues, solicitaron al Tribunal que declarara No Ha Lugar la *Solicitud de Determinaciones Adicionales de Hechos y Reconsideración.* El 12 de agosto de 2024 el Foro primario mediante *Reconsideración y Determinaciones de Hechos Adicionales,* modificó la cuantía impuesta inicialmente en concepto de Honorarios de Abogados a $5,000.00.

Inconforme aún, el 20 de diciembre de 2024, el Apelante acude ante nos mediante *Recurso de Apelación.* Plantea:

1. Erró el Tribunal de Primera Instancia al ordenar a la parte demandada-apelante a pagar la suma de $4,311.00 por concepto de sellado de techo contratado entre la demandante-apelada y el señor Patrick Karlsson siendo este último un contratista no registrado ante el DACO, en violación de la Ley 146 del 10 de agosto de 1995, conocida como la Ley de registro de contratistas.

2. Erró el tribunal de Primera Instancia al concluir que los demandados incumplieron al contrato entre las partes, sin considerar que la demandante-apelada no contaba con un poder debidamente protocolizado, en el que el esposo de la misma la facultara a representarlo en el proceso de préstamo hipotecario y ante el Tribunal.

3. Erró el Tribunal de Primera Instancia al concluir que los demandados-apelantes incumplieron con el contrato entre las partes por no haber realizado la mensura del solar que ubica la casa objeto de la controversia, cuando la prueba presentada y no impugnada demostró que en efecto si se realizó la misma.

4. Erró el tribunal de Primera Instancia al concluir que los demandados debían pagar a la parte demandante los gastos de originación de préstamo ante el FirstBank, cuando fue este precisamente quien abandonó dicho proceso, cambiando de banco tan pronto le requirieron el poder protocolizado en que su esposo alegadamente, le facultaba a representarle.

5. Erró el Tribunal de Primera Instancia al determinar que no se completó la compra del inmueble por culpa y negligencia de los demandados al no realizar un proceso de tutoría de la señora Vargas por tener Alzheimer.

---
[12] Entrada 92 SUMAC.

6. Erró el Tribunal de Primera Instancia al imponer a la parte demandada-apelante, la suma de $5,000.00 en concepto de honorarios de abogado por temeridad, sin considerar que los demandados-apelantes actuaban en la defensa de un legítimo derecho, basados en fundamentos de derecho genuinos y reclamando su día en corte y acceso a los tribunales.

El 8 de enero de 2025, mediante *Resolución* ordenamos a la parte Apelante a evidenciar el cumplimiento con lo dispuesto en la Regla 14 (B) de nuestro Reglamento en un periodo de cinco (5) días. Asimismo, concedimos a la parte Apelante hasta el 15 de enero de 2025 para acreditar qué método de prueba utilizarían. Posterior a varios trámites, el 2 de mayo de 2025, los Apelados presentaron el *Alegato de la Apelada.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

### -II-

### -A-

En Puerto Rico rige el principio de la libertad de contratación o autonomía de la voluntad, según el cual las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que las mismas no sean contrarias a las leyes, a la moral ni al orden público. *Feliciano v. Luxury Hotels Int'l of P.R. Inc.,* 210 DPR 712, 728 (2022); *Álvarez v. Rivera,* 165 DPR 1, 17 (2005); *S.L.G. Irizarry v. S.L.G. García,* 155 DPR 713 (2001); *Trinidad v. Chade,* 153 DPR 280 (2001); *Arthur Young & Co. v. Vega III,* 136 DPR 157 (1994); *Plaza del Rey, Inc. v. Registrador,* 133 DPR 188 (1993); *Casiano, Jr. v. Borintex Mfg. Corp.,* 133 DPR 127 (1993).

Por otra parte, "[e]l contrato queda perfeccionado desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva". Art. 1237 del Código Civil, 31 LPRA § 9771. De esta manera, el contrato se perfecciona desde que las partes prestan su

consentimiento. Consecuentemente, respecto a la indemnización por responsabilidad civil se dispone: "La persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados". 31 LPRA § 9303, Art. 1158.

De conformidad con lo anterior, son daños y perjuicios indemnizables los siguientes:

> El deudor de buena fe responde de los daños y perjuicios previstos o previsibles al tiempo de constituirse la obligación.
>
> En caso de dolo, el deudor responde de todos los daños y perjuicios que se deriven de su incumplimiento. 31 LPRA § 9332.

En tanto en cuanto, existe una facultad implícita de resolución. En lo específico, en los contratos con prestaciones recíprocas se encuentra implícita la facultad de resolver extrajudicialmente el contrato por falta de cumplimiento de una obligación principal, conforme a las siguientes reglas:

> (a) la parte incumplidora debe estar en mora;
>
> (b) debe requerirse a la parte incumplidora, bajo apercibimiento de resolver el contrato total o parcialmente, que cumpla su obligación, incluyendo el daño moratorio;
>
> (c) las prestaciones parcialmente cumplidas no se resuelven y quedan firmes;
>
> (d) la resolución opera al momento de vencer el requerimiento;
>
> (e) la resolución produce el efecto previsto en este Código para la condición resolutoria cumplida; y
>
> (f) puede reclamarse el cumplimiento y el resarcimiento de daños. 31 LPRA § 9823, Art. 1255.
> . . .

En lo pertinente al caso ante nuestra consideración, el contrato de opción es "el convenio por el cual una parte (llamada optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal." *Mayagüez Hilton Corp. v. Betancourt*, 156 DPR 234, 246 (2002), citando a *Atocha Thom McAn, Inc. v. Registrador*, 123 DPR

571 (1989) (cita depurada). Los requisitos esenciales del contrato de opción son: la concesión por una parte a la otra de la facultad de decidir sobre la celebración del contrato por el cual se opta, de modo exclusivo, por plazo cierto y sin otra condición que el propio juicio del optante. *Íd.*, citando a J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, Madrid, Ed. Reus, 14ta ed., 1988, T. IV, pág. 50 (cita depurada).

El referido contrato otorga al optante la facultad de determinar, dentro del plazo concedido, si perfecciona el contrato definitivo, es decir, el contrato por el cual optó. *Matos Lorenzo v. Rivera Tirado*, 181 DPR 835, 841 (2011). Por ello, "no se opta por optar, sino que la opción es la posibilidad de perfeccionar un contrato previamente delimitado". *Íd.*, citando a J. Puig Brutau, *Fundamentos de Derecho Civil, Barcelona*, Ed. Bosch, 1982, Tomo II, Vol. 2, pág. 50 (cita depurada). Asimismo, el optatario viene obligado a no frustrar la facultad que le asiste al optante mientras el plazo para ejercer el derecho de opción está vigente. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 250; Castán Tobeñas, *op. cit.*, págs. 54-55.

Como norma general, el optante puede ejercer su derecho de opción simplemente notificando al optatario su voluntad de perfeccionar el convenio por el cual optó. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 246. Véase, además, Puig Brutau, op. cit., pág. 57. No obstante, dicho derecho queda extinguido con su renuncia o si transcurre el plazo concedido sin que el optante ejerza la opción se estima entonces caducado. *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 249.

De otra parte, si la opción se ejerce dentro del plazo acordado, el contrato de opción queda extinguido y a su vez se perfecciona el contrato aceptado según haya sido previamente delimitado. *Íd.* Desde entonces, las partes vienen obligadas a satisfacer sus

respectivas prestaciones bajo el contrato definitivo. Véase, *Rosa Valentín v. Vázquez Lozada*, 103 DPR 796, 809-810 (1975), citando la sentencia del Tribunal Supremo de España de 23 de marzo de 1945 (cita depurada).

El Tribunal Supremo ha reconocido que las normas generales sobre las obligaciones y los contratos son aplicables al contrato de opción. *Matos Lorenzo v. Rivera Tirado*, supra, 842-843; *Rosa Valentín v. Vázquez Lozada*, supra, pág. 804; *Pérez v. Sampedro*, 86 DPR 526, 529 (1962). Véase, además, Puig Brutau, *op. cit.*, pág. 49. Por ello, rige aquí también el principio de libertad de contratación o autonomía de la voluntad contractual antes mencionado, bajo el cual los contratantes pueden pactar las cláusulas y condiciones que estimen convenientes mientras no contravengan las leyes, la moral ni el orden público. Artículo 1528 del Código Civil, *supra*; *Álvarez v. Rivera*, supra, pág. 17; *Vélez v. Izquierdo*, 162 DPR 88, 98 (2004); *S.L.G. Irizarry v. S.L.G. García*; supra, págs. 724-25; *Trinidad v. Chade*, supra, pág. 289; *Arthur Young & Co. v. Vega III*, supra, págs. 169-170; *Plaza del Rey, Inc. v. Registrador*, supra, págs. 192-193. Una vez las partes prestan su consentimiento, quedan entonces vinculadas por los términos del contrato, siendo esta la ley entre las partes. *Constructora Bauzá, Inc. v. García López*, supra, pág. 593; *Cervecería Corona v. Commonwealth Ins. Co.*, supra.

Finalmente, los tribunales tienen la facultad y el deber de velar por el cumplimiento de los contratos. Por lo tanto, no debemos relevar a una parte del cumplimiento de su obligación contractual, cuando el contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 610, 627 (1997).

### -B-

La Ley Núm. 146 de 10 de agosto de 1995, Ley de Registro de Contratistas, según enmendada, tiene el objetivo de orientar a la ciudadanía ordenando la inscripción de todo contratista en un

Registro. Dicho registro contiene toda la información relacionada a las querellas que se generen en contra de los contratistas por razón de incumplimiento o cuando el trabajo resulte defectuoso. 23 LPRA sec. 1020b. El Art. 1 de la Ley Núm. 146-1995, define contratista como: [U]na persona natural o jurídica que somete una propuesta u oferta de construcción, administra, dirige o en cualquier otra forma directa o indirecta, asume la dirección de una obra de construcción, según definida en este capítulo, o que se anuncia como tal. Este término incluye también a los subcontratistas o cualquier contratista especializado y a toda persona que se dedique a la industria de la construcción. En virtud de las disposiciones de la Ley Núm. 146-1995, el DACo promulgó el Reglamento Núm. 8172 de 19 de marzo de 2012, el cual se titula "Reglamento para el Registro de Contratistas", con el propósito de crear el Registro de Contratistas adscrito a la Oficina de Construcción del DACo. Véase, Regla III del Reglamento Núm. 8172. A su vez, la Regla IV del Reglamento ordena la inscripción de todo contratista en el Registro de Contratistas, según definido en la Ley Núm. 146-1995.

Cónsono con lo anterior, la Regla V(d) del Reglamento Núm. 8172, define contratista como: [U]na persona natural o jurídica que se dedique a realizar mejoras, modificaciones, alteraciones, instalaciones y reparaciones esenciales en edificaciones dedicadas a vivienda y/o somete una propuesta u oferta de construcción, administra, dirige o en cualquier otra forma directa o indirecta, asume la dirección de una obra o construcción, según definida en este capítulo, o que se anuncia como tal. Este término incluye también a los subcontratistas o cualquier contratista especializado, y a toda persona que se dedique a la industria de la construcción. Incluye pero no se limita a movimiento de terreno; cercos; traslado y demolición de estructuras; sistemas de saneamientos; toldos; excavación de zanjas; contratista de gabinetes; carpinteros

independientes; albañiles independientes; instaladores de lozas y azulejos; instaladores de puertas y ventanas; contratista de obras de cristales; impermeabilizadores, selladores y reparadores de techos; maestro y/u oficial plomero; peritos electricistas; técnico de refrigeración y aire acondicionados; contratista de piscinas; contratista de servicios de mantenimiento; soldadores independientes; instaladores y servicios de mantenimiento de sistemas de equipos de seguridad electrónica; dueños de equipos pesados que realizan trabajos de construcción y limpieza; jardineros; y cualquier otro que pueda ser categorizado como contratita y/o realice trabajos de construcción según se define en este Reglamento. La persona natural o jurídica que realice obras sin haberse registrado previamente en el Registro de Contratistas está sujeta a las penalidades criminales y civiles que establece la Ley Núm. 146-1995.

Particularmente, el Art. 5 de la ley establece que el incumplimiento constituye un delito menos grave. Si el contratista resulta convicto, será penalizado con una multa que no excederá de $500.00 o a una pena de restitución, o ambas penas, a discreción del tribunal. El Secretario del DACo podrá optar por imponer una multa administrativa en lugar de presentar una querella criminal en cuyo caso, la multa no podrá exceder de $5,000.00. 23 LPRA sec. 1020e.

-*C*-

Como es sabido, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia. *Argüello v. Argüello*, 155 DPR 62, 79 (2001) citando a *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Trinidad v. Chade*, 153 DPR 280, 289 (2001). Por ello, la valoración que lleva a cabo el foro primario se presume correcta, toda vez que es este quien tiene la oportunidad

de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales. *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021); *Meléndez Vega v. El Vocero de PR*, 189 DPR 123, 142 (2013); *Pueblo v. Santiago*, 176 DPR 133, 148 (2009); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000).

Por su parte, un foro apelativo cuenta solamente con "récords mudos e inexpresivos", por lo que se le debe respeto a la adjudicación de credibilidad realizada por el juzgador primario de los hechos. *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009); *Trinidad v. Chade, supra*, 291.En ese sentido, y como regla general, no debemos intervenir con las determinaciones de hechos formuladas por el foro primario en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022).

En vista de lo anterior, nuestro máximo foro ha resuelto que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o cuando un análisis integral de la prueba así lo justifique, o cuando haya indicios de pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Calderón Álvarez,* 140 DPR 627, 644 (1996); *Coop. Seguros Múltiples de P.R. v. Lugo*, 136 DPR 203, 208 (1994); *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987); S*ierra v. Tribunal Superior*, 81 DPR 554, 572 (1959).

El Alto Foro ha determinado que un juzgador incurre en pasión, prejuicio o parcialidad si actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 782 (2013). En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del

foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas por el mismo, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011); *Ramírez Ferrer v. Conagra Foods PR*, 175 DPR 799, 811 (2009); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Pueblo v. Irizarry*, 156 DPR 780, 789 (2002); *Pueblo v. Maisonave*, 129 DPR 49, 62-63 (1991).

Con relación al error manifiesto, un juzgador incurre en este cuando de un análisis de la totalidad de la evidencia, este Tribunal queda convencido de que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida. *Dávila Nieves v. Meléndez Marín, supra*, 772. Por tanto, debe existir base suficiente en la prueba admitida que apoye la determinación del foro. *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018); *Pueblo v. Irizarry, supra*.

De igual forma, se podrá intervenir con la determinación del TPI cuando la referida valoración se aparte de la realidad fáctica o resulte inherentemente imposible o increíble; de lo contrario, el tribunal apelativo deberá abstenerse de intervenir con la apreciación de la prueba hecha por el juzgador de los hechos. *Santiago Ortiz v. Real Legacy et al., supra; Pueblo v. Arlequín Vélez,* 204 DPR 117, 148 (2020); *Pueblo v. Martínez Landrón*, 202 DPR 409, 424 (2019) citando a *Pueblo v. Maisonave, supra*, 63; *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2009); *Pueblo v. Irizarry, supra; Pueblo v. Acevedo Estrada, supra*.

Ahora bien, cabe destacar que, el Tribunal Supremo ha resuelto que, en instancias en que las conclusiones de hecho que

realice el TPI estén basadas en prueba pericial o documental, un tribunal revisor estará en la misma posición que el tribunal *a quo*. *González Hernández v. González Hernández, supra*, 777. Por tanto, ante dichas instancias, este tribunal apelativo "tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Íd.*

A esos efectos, aunque no está exenta de la posibilidad de toda revisión, si la actuación del tribunal a *quo* no está desprovista de base razonable ni perjudica los derechos sustanciales de una parte, lo lógico es que prevalezca el criterio del TPI a quien corresponde la dirección del proceso. S*ierra v. Tribunal Superior*, supra. Los foros apelativos podremos intervenir con tal apreciación luego de realizar una evaluación rigurosa y que, de esta, surjan serias dudas, razonables y fundadas. *Pueblo v. Pérez Núñez,* supra.

Las decisiones discrecionales que toma el TPI no serán revocadas a menos que se demuestre que ese foro abusó de su discreción. *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434 (2013); *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009). Un tribunal de justicia incurre en un abuso de discreción cuando el juez: (i) no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (ii) por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en éste; o, (iii) no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descartar los irrelevantes, los sopesa y calibra livianamente. *Pueblo v. Rivera Santiago*, supra.

A su vez, es una norma bien establecida de nuestro sistema de justicia que la discreción judicial permea la evaluación de la evidencia presentada en los casos y controversias. *González*

*Hernández v. González Hernández,* supra, pág. 776. No obstante, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal revisor. *Rivera Pérez v. Cruz Corchado,* supra. A esos efectos, conviene destacar que, la intervención del foro apelativo con la prueba desfilada tiene que estar basada en un análisis independiente y no a base de los hechos que exponen las partes. *Hernández v. San Lorenzo Const.*, 153 DPR 405, 425 (2001).

***-D-***

La Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. Se considera temeridad "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables." *Marrero Rosado v. Marrero Rosado*, 178 DPR 476, 504 (2010). Esta misma conducta se toma en cuenta tanto para la imposición de honorarios de abogado al amparo de la Regla 44.1 (d) de Procedimiento Civil, *supra*, como para la imposición del interés legal por temeridad al amparo de la Regla 44.3 (b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.3 (b). *Íd.* Según lo ha expresado el Tribunal Supremo, ambas penalidades "persiguen el mismo propósito de disuadir la litigación frívola y fomentar las transacciones mediante sanciones que compensen a la parte victoriosa los perjuicios económicos y las molestias producto de la temeridad de la otra parte." *Íd.,* en la pág. 505.

Sin embargo, solo procede la obligación de satisfacer intereses por temeridad, cuando se trata de acciones de **cobro de dinero** y de daños y perjuicios. *Marrero Rosado v. Marrero Rosado, supra*; *Insurance Co. of PR v. Tribunal Superior,* 100 DPR 405 (1972). A tales efectos, la Regla 44.3 (b) de Procedimiento Civil, dispone:

. . .

> b) El tribunal también impondrá a la parte que haya procedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia **desde que haya surgido la causa de acción en todo caso de cobro de dinero** y desde la presentación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia a computarse sobre la cuantía de la sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios(as) en su carácter oficial. El tipo de interés de hará constar en la sentencia. 32 LPRA Ap. V, R. 44.3 (b).

Así, el propósito de la imposición de honorarios por temeridad es penalizar a la parte perdidosa "que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito." *Rivera v. Tiendas Pitusa,* Inc., 148 DPR 695, 702 (1999); *Andamios de PR v. Newport Bonding,* 179 DPR 503 (2010). Se considera que incurre en temeridad aquella parte que torna necesario un pleito frívolo y obliga a la otra a incurrir en gastos innecesarios. *P.R. Oil v. Dayco,* 164 DPR 486, 511 (2005).

A modo de ejemplo, puede incurrirse en conducta temeraria cuando en la contestación a la demanda se niegue responsabilidad, pero esta se acepte posteriormente; cuando la parte demandada se defienda injustificadamente de la acción en su contra; cuando la parte demandada crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante; cuando el demandado se arriesgue a litigar un caso del que surja claramente su responsabilidad; y cuando una parte niegue la certeza de un hecho, a pesar de constarle su veracidad. *O.E.G. v. Román González,* 159 DPR 401, 418 (2003). La determinación de si una parte obró con temeridad descansa en la sana discreción del tribunal sentenciador. *P.R. Oil v. Dayco,* supra, pág. 511. La imposición del pago de honorarios de abogado es imperativa cuando

el tribunal sentenciador concluye que una parte incurrió en temeridad. *Íd.*

Así pues, el Tribunal Supremo ha resuelto que "[e]n ausencia de una conclusión expresa a tales efectos, un pronunciamiento en la sentencia condenando al pago de honorarios de abogado, implica que el tribunal sentenciador consideró temeraria a la parte así condenada." *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 DPR 38, 39-40 (1962). En otras palabras, no es necesaria una determinación expresa de temeridad si el foro sentenciador impuso el pago de una suma por honorarios de abogado en su sentencia. Por constituir un asunto discrecional del tribunal sentenciador, los tribunales revisores solo intervendremos en dicha determinación cuando surja que un claro abuso de discreción. *P.R. Oil v. Dayco*, supra, pág. 511.

Por otra parte, no existe temeridad cuando lo que se plantea ante el tribunal de instancia son planteamientos complejos y novedosos que no han sido resueltos en nuestra jurisdicción. De igual manera, no existe temeridad en aquellos casos en que el litigante actúa de acuerdo con la apreciación errónea de una cuestión de derecho y no hay precedentes establecidos sobre la cuestión. Tampoco se incurre en temeridad cuando existe alguna desavenencia honesta en cuanto a quién favorece el derecho aplicable a los hechos del caso. *Santiago v. Sup. Grande*, 166 DPR 796, 821 (2006). Señala el Profesor Cuevas Segarra que "[n]o constituye temeridad limitarse a defender sus derechos e intereses." José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da. Ed., San Juan, Publicaciones JTS, 2011, Tomo IV, pág. 1307.

### -*III*-

En el recurso ante nuestra consideración, el Apelante esbozó seis (6) señalamientos de error. En *primer* lugar, sostuvo que erró el TPI al ordenarle pagar la suma de $4,311.00 para el pago del sellado

del techo, siendo el contratista uno no registrado ante el DACo, en violación a la Ley 146-1995. Adelantamos que no le asiste la razón.

En el presente caso, los señores Erickson suscribieron un contrato de opción de compraventa con el Apelante y su esposa la señora Vargas Vargas.[13] Como parte del proceso de compraventa, la entidad financiera requirió a la Apelada la instalación del agua y el sellado del techo de la propiedad.[14] Además, es un hecho probado que las partes acordaron que la señora Erickson contrataría los servicios requeridos. De esta forma, esta contrató al señor Karlsson, quien hace negocios como PK Remodeling and Roofing, para hacer el trabajo del sellado de techo por una cantidad de $4,311.00.[15] A su vez, de la transcripción del juicio en su fondo y del expediente surge que el techo fue reparado en su totalidad.[16]

A pesar de ello, el Apelante nos invita a concluir que no le corresponde el pago del sellado del techo debido a que la compañía contratada, PK Remodeling and Roofing, no está inscrita en el Registro de Comerciantes. No obstante, la Ley 146-1995 requiere la inscripción de los contratistas en el Registro de Comerciante, lo cierto es que esta extiende la facultad de imponer multas o radicar cargos criminales al DACo. En lo específico, el Art. 5 de la ley establece que el incumplimiento de la inscripción constituye un delito menos grave. Si el contratista resulta convicto, será penalizado con una multa que no excederá de $500.00 o a una pena de restitución, o ambas penas, a discreción del tribunal. El Secretario del DACo podrá optar por imponer una multa administrativa en lugar de presentar una querella criminal en cuyo caso, la multa no podrá exceder de $5,000.00. 23 LPRA sec. 1020e. Por tanto, del Apelante considerar querellar al contratista, este

---

[13] Apéndice VIII de la parte Apelante, Determinación de hecho 1, págs. 16-26; Entrada 89 SUMAC.
[14] *Íd.*, determinación de hecho 8.
[15] *Íd.*, determinación de hecho 12.
[16] Apéndice de la parte Apelada, Exhibits 1, 2 y 7.

deberá acudir al foro pertinente para ello. Cabe señalar que el TPI se limitó a consignar como hecho incontrovertido que la señora Erickson contrató al señor Karlsson para el sellado de techo. De esta forma, le corresponde al Apelante devolver el pago de $4,311.00 a la Apelada. No se cometió el *primer* señalamiento de error.

En su *segundo* señalamiento de error, el Apelante sostuvo que incidió el Foro *a quo* al concluir que estos incumplieron con el contrato sin tomar en consideración que la Apelada no ostentaba un poder debidamente protocolizado para la representación de su esposo en el proceso del préstamo hipotecario y ante el Tribunal. En su *tercer* señalamiento de error, alegó que erró el TPI al concluir que estos incumplieron con el contrato por no haber realizado la mensura del solar que ubica en la casa objeto de la controversia. De otro lado, en su *cuarto* señalamiento de error, arguyó que el Foro primario incidió al imponerle los gastos de origen del préstamo de FirstBank. Por otro lado, el Apelante en su *quinto* señalamiento de error dispuso que erró el TPI al determinar que no se completó la compraventa por la culpa o negligencia de estos al no realizar un proceso de tutoría de la señora Vargas Vargas por el Alzheimer. Se discutirán en conjunto los señalamientos de error *segundo, tercero, cuarto* y *quinto* por estar estrictamente relacionados.

Primeramente, el ejercicio discrecional de la apreciación de la prueba que ejerce el TPI y las determinaciones que realiza están revestidas de confiabilidad y merecen respeto y deferencia. *Argüello v. Argüello*, supra, pág. 79, citando a *Pueblo v. Bonilla Romero*, supra, pág. 111; *Trinidad v. Chade*, supra, pág. 289. Por ello, **la valoración que lleva a cabo el foro primario se presume correcta**, toda vez que es este quien tiene la oportunidad de ver, escuchar y valorar las declaraciones de los testigos, así como sus lenguajes no verbales. *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Meléndez Vega v. El Vocero de PR*, supra, pág. 142; *Pueblo v.*

*Santiago*, supra, pág. 148; *Pueblo v. Acevedo Estrada*, supra, pág. 99 (Énfasis nuestro). En consecuencia, al este tribunal apelativo enfrentarse a la tarea de revisar las determinaciones del foro de instancia, no debe intervenir con las determinaciones de hechos, con la apreciación de la prueba ni con la adjudicación de credibilidad efectuadas, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo. *González Hernández v. González Hernández*, supra, pág. 776; *Ramírez Ferrer v. Conagra Foods PR*, supra, pág. 811; *Rivera y otros v. Bco. Popular*, supra, pág. 155; *Pueblo v. Irizarry*, supra, pág. 789; *Pueblo v. Maisonave*, supra, págs. 62-63. Ante la ausencia de perjuicio, parcialidad o abuso de discreción por parte del TPI, sostenemos las determinaciones de hechos comprendidas por dicho Foro.

Por otro lado, en cuanto al contrato de opción, nuestro Más Alto Foro lo ha definido como "el convenio por el cual una parte (llamada optatario) concede a la otra (llamada optante), por tiempo fijo y en determinadas condiciones, la facultad, que se deja exclusivamente a su arbitrio, de decidir respecto a la celebración de un contrato principal." *Mayagüez Hilton Corp. v. Betancourt*, supra, pág. 246, citando a *Atocha Thom McAn, Inc. v. Registrador*, supra. Asimismo, el Tribunal Supremo ha reconocido que las normas generales sobre las obligaciones y los contratos son aplicables al contrato de opción. *Matos Lorenzo v. Rivera Tirado*, supra, 842-843; *Rosa Valentín v. Vázquez Lozada*, supra, pág. 804; *Pérez v. Sampedro*, 86 DPR 526, 529 (1962). Véase, además, Puig Brutau, *op. cit.*, pág. 49.

Por tal razón, una vez las partes prestan su consentimiento, estas quedan entonces vinculadas por los términos del contrato,

siendo esta la ley entre las partes. *Constructora Bauzá, Inc. v. García López*, supra, pág. 593; *Cervecería Corona v. Commonwealth Ins. Co.*, supra. Precisa señalar que es un hecho probado que las partes otorgaron un contrato de opción, y que estas al otorgar su consentimiento en el referido contrato quedaron vinculadas a los términos y condiciones del mismo.[17] Así, pues, la parte vendedora, el Apelante, se obligó a vender la propiedad a la Apelada por el precio de $150,000.00.

De otro lado, puntualizamos que quedó probado ante el TPI que Firstbank notificó el poder que ostentaba el Apelado sobre su esposa, la señora Vargas Vargas para completar el proceso de compraventa no era viable para completar la misma, debido a que esta padecía de Alzheimer, debían proveer una certificación médica.[18] Además, se demostró que Firstbank le requirió al Apelado la certificación médica de la señora Vargas Vargas para acreditar su capacidad para completar la compraventa.[19] No obstante, este no presentó la certificación requerida ante el banco y optaron por un cambio de banco a Rincón Coop., entidad que también señaló la incapacidad de la señora Vargas Vargas y a la que tampoco se le acreditó la capacidad de esta.

Por otra parte, es apreciación de este Foro que se demostró que el Apelante no completó la mensura requerida por el banco en el tiempo establecido para ello. Reiteramos que la mensura fue requerida desde el 22 de abril de 2022 y no fue hasta el cambio de entidad bancaria que el Apelante llevó a cabo la mensura requerida, seis meses después.[20] Es menester destacar, que las partes quedaron sujetas a la indemnización de los daños y perjuicios

---

[17] Apéndice de la parte Apelada, Exhibit 3, págs. 17-20.
[18] Apéndice VIII de la parte Apelante, Determinación de hecho 1, págs. 16-26; Entrada 89 SUMAC.
[19] *Íd.*
[20] Apéndice VIII de la parte Apelante, Determinaciones de hecho 14 y 19, págs. 16-26; Entrada 89 SUMAC.

causados en caso del incumplimiento de sus obligaciones. Así, pues, del contrato se desprende que este establecía que, en caso del incumplimiento de los vendedores, los compradores tendrían el derecho de cancelarlo, en cuyo caso tendrían el derecho a resarcimiento de daños más la devolución del depósito.[21] Incluso, en nuestro ordenamiento jurídico se ha establecido que todo incumplimiento contractual dará lugar a un resarcimiento. 31 LPRA § 8981. Por tanto, ante el incumplimiento del Apelante con los requisitos de los bancos anteriormente esbozados, coincidimos con el Foro *a quo* en que este responde por los daños y perjuicios ocasionados a la Apelada. Reiteramos que "[l]a persona que de cualquier modo contraviene el tenor de su obligación, debe indemnizar los daños y perjuicios causados". 31 LPRA § 9303, Art. 1158.

De conformidad con lo anterior, son daños y perjuicios indemnizables los siguientes: El deudor de buena fe responde de los daños y perjuicios previstos o previsibles al tiempo de constituirse la obligación. En caso de dolo, el deudor responde de todos los daños y perjuicios que se deriven de su incumplimiento. 31 LPRA § 9332. El requerimiento de la acreditación de la capacidad de la señora Vargas Vargas era previsible, pues el Apelante conocía de su condición. Además, el no cumplir con lo anterior llevó a que no se completara la compraventa. Por ende, corresponde al Apelante pagar por los gastos de origen del préstamo en FirstBank incurridos por la Apelada. Por todo lo anterior, no se cometieron los señalamientos de error *segundo, tercero, cuarto* y *quinto.*

De otro lado, el Apelante en su *sexto* señalamiento de error dispuso que erró el TPI al imponer la suma de $5,000.00 en concepto de honorarios de abogado por temeridad.

---

[21] Apéndice de la parte Apelada, Exhibit 3, págs. 17-20.

Según expuesto anteriormente, la Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), permite la imposición de honorarios en caso de que cualquiera de las partes, o su abogado, procedan con temeridad o frivolidad. Se considera temeridad "aquella conducta que hace necesario un pleito que se pudo evitar, que lo prolonga innecesariamente o que obliga que la otra parte incurra en gestiones evitables". *Marrero Rosado v. Marrero Rosado*, supra, pág. 504. Por tanto, puede incurrirse en conducta temeraria cuando en la contestación a la demanda se niegue responsabilidad, pero esta se acepte posteriormente; **cuando la parte demandada se defienda injustificadamente de la acción en su contra**; cuando la parte demandada crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante; **cuando el demandado se arriesgue a litigar un caso del que surja claramente su responsabilidad**; y cuando una parte niegue la certeza de un hecho, a pesar de constarle su veracidad. *O.E.G. v. Román González*, supra, pág. 418 (Énfasis nuestro). Coincidimos con el Foro primario en que el Apelante incurrió en temeridad, pues, este continuó con un pleito del que surge claramente su responsabilidad frente a la Apelada.

De igual forma, la determinación de si una parte obró con temeridad **descansa en la sana discreción del tribunal sentenciador.** *P.R. Oil v. Dayco*, supra, pág. 511 (Énfasis nuestro). En consecuencia, por constituir un asunto discrecional del tribunal sentenciador, los tribunales revisores solo intervendremos en dicha determinación cuando surja que un claro abuso de discreción. *P.R. Oil v. Dayco*, supra, pág. 511. Por tal razón, ante la ausencia de abuso de discreción, concluimos que no se cometió el *sexto* error señalado.

***-IV-***

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, se *confirma* la Sentencia Apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones